William H. FERGUSON, Plaintiff,

v.

A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 71-C-126-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Feb. 28, 1972.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

William Herman Ferguson, a state prisoner, brings to this court a petition for a writ of habeas corpus to terminate his alleged illegal confinement in the Virginia state prison system. Leave to proceed *in forma pauperis* has been granted.

Petitioner is currently detained pursuant to a judgment of the Hustings Court of the City of Roanoke imposed on March 15, 1968, wherein he was convicted of rape and sentenced to a term of forty (40) years in the state penitentiary. At trial petitioner, represented by court-appointed counsel, entered a plea of not guilty and, with the consent of the Court and the Commonwealth, was tried by the court without a jury. The ensuing conviction was not appealed.

Ferguson later filed several unsuccessful original and amended habeas corpus petitions in the Hustings Court, in which

he alleged the same grounds presented here. The last of the petitions was dismissed by the Court after hearing on March 3, 1971, and that judgment was affirmed on appeal by the Virginia Supreme Court on September 1, 1971. Shortly thereafter petitioner filed a petition for a writ of habeas corpus in the Virginia Supreme Court, which dismissed the petition on November 3, 1971. Having presented his claims to the state's highest court, petitioner has exhausted his available state remedies in compliance with the provisions of 28 U. S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963).

In this petition, Ferguson seeks relief upon several grounds: (1) violation of Section 16.1–172, Virginia Code Annotated; (2) ineffective assistance of counsel; and (3) improper lineup procedure. Petitioner has withdrawn from consideration by this Court a fourth allegation, to wit, that he was the victim of unfavorable pre-trial publicity, because he has failed to present this claim to any court in a prior proceeding.

■ All facts necessary for the court to rule in this case were developed in the plenary hearing before the Hustings Court or have been established by other parts of the record. Therefore it is unnecessary to conduct a hearing to determine additional facts. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

■ Because petitioner was 16 years old at the time of his arrest he was brought before the Judge of the Juvenile and Domestic Relations Court of Roanoke on October 20, 1967, to determine whether he should be certified to the grand jury of the Hustings Court to be tried as an adult offender. Code § 16.1–176. Code § 16.1–172 states that a parent or other legal guardian of the minor must be notified before the certification hearing in the Juvenile Court may proceed. Further, Code § 16.1–173 provided (prior to the 1968 amendments) that if no such person is present at the hearing, the Juvenile Court must then appoint a *guardian ad litem* to protect the minor's interests at the hearing. Failure to comply with any of the alternatives provided in these sections deprives the court of record of jurisdiction and renders void any subsequent conviction therein. Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969); Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967).

■ The probation officer's investigative report, which is part of the Juvenile Court record, recites that Ferguson's mother did in fact appear at the certification hearing. Nevertheless, petitioner apparently claims that the Hustings Court violated the provisions of Code § 16.1–172. That section, however, establishes procedures only for the Juvenile Court and has no application once the case has been certified to the court of record. Here, moreover, after the Juvenile Court had determined that petitioner should be tried as an adult, the Hustings Court was not required to make a similar but independent determination before proceeding with the trial. See Code § 16.1–175. Clearly, petitioner's initial claim has no merit.

■ Petitioner further alleges that his court-appointed counsel's representation was ineffective because counsel failed to introduce several letters written by Raymond Lee Muse, a co-felon, to petitioner and to other co-felons in order to impeach Muse's trial testimony. Muse indicated at trial that petitioner was with him and two others when the crimes occurred and intimated that Ferguson did commit the rape as charged. Although they do not indicate that petitioner did take part in the crimes, the letters do not, as petitioner contends, exonerate him; rather, they largely reveal Muse's belief that his sentence would be lighter if he testified for the Commonwealth at petitioner's trial.[1] Petition-

1. At the time of Ferguson's trial, Muse had been convicted upon, but not sentenced for, two counts of rape.

er's counsel had these letters in his possession at trial and showed them to Muse when he testified, but he did not introduce them as evidence. Counsel however vigorously attempted to impeach Muse's testimony on the grounds that a promise of a lighter sentence induced statements favorable to the Commonwealth and, further, challenged the admission of the testimony on the same grounds. Under these circumstances the court holds that counsel's failure to introduce these letters constitutes an error, if error at all, in the tactical conduct of the trial which does not deprive petitioner of his right to counsel as guaranteed by the Sixth and Fourteenth Amendments. Tompa v. Commonwealth of Virginia, 331 F.2d 552 (4th Cir. 1965).

Finally, petitioner alleges that the witnesses' in-court identification was fatally tainted by the conduct of the pre-indictment lineup. The lineup was conducted at the Roanoke Juvenile Court on September 26, 1967, about three weeks after the rapes occurred. By order of the Juvenile Court, Mr. Charles Viar was appointed as counsel to represent all four offenders, including petitioner, at the lineup. These four participated therein with four other Negro males: all eight participants were of similar age, color, and general appearance, although there were some differences in stature. Each of the two adult female victims individually viewed the lineup three times. At the suggestions of both the Commonwealth Attorney and Mr. Viar, the police rearranged the participant's positions in the lineup and had them exchange shirts on every other viewing so that each witness saw in effect three different lineups involving the same participants. Although each witness identified petitioner's three co-felons, neither witness identified petitioner; nor after the lineup did anyone discuss with either witness petitioner's presence in it. Both witnesses initially identified petitioner at the certification hearing in the Juvenile Court, and both subsequently identified him at trial.

Ferguson claims that the lineup procedure violated the mandates of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967) because he was not aware of, nor had he consented to, Viar's appointment. Therefore he apparently argues, the in-court identifications were triggered by the witnesses' opportunity to see him in the illegal lineup even though they did not identify him. This claim too lacks merit. At his arrest several days before the lineup, petitioner was advised *inter alia* that he was entitled to counsel and that the court would secure counsel for him if he so desired. Petitioner did not inform the police that he wanted counsel. Although he did not meet Mr. Viar, neither he nor any of the others had been indicted when Mr. Viar was appointed. It is clear also that counsel actively supervised the conduct of the lineup, and there is no suggestion that a conflict of interest was created by his representation of all four offenders. It is thus difficult to determine what more Mr. Viar or any other counsel could have done to improve the conduct of the lineup.

■■ Although it appears that the appointment of Mr. Viar satisfied the requirements of *Wade* and *Gilbert*, the court rests its determination upon the ground that, assuming the appointment was in fact improper, petitioner has suffered no prejudice. The police and the attorneys minimized the differences of the participants as reasonably as could have been done to insure a proper lineup. Not only was the failure of the witnesses to identify the petitioner at the lineup introduced at trial, but it was also pointed out to the trier that at subsequent stages in the proceedings the witnesses did not know petitioner was a participant. Moreover, the witnesses had ample opportunity—more than an hour—to observe petitioner during the criminal act. Finally, Muse's statements supported the witnesses' assertions that petitioner was present when the acts oc-

curred. Under these circumstances, it is clear that the in-court identifications were not triggered by the lineup identifications but were of independent origin. In this posture the witnesses' failure to identify petitioner at the lineup presents only an issue of the evidentiary weight of the in-court identifications, which is beyond the scope of a federal habeas proceeding.

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.