## MATTER OF JOHN INGRAM

[No. 591, September Term, 1971.]

*Decided May 18, 1972.*

---

The cause was submitted on briefs to THOMPSON, MOY-LAN and GILBERT, JJ.

Submitted by *Charles C. Lee* and *Josey, Gibson, Allen* and *Mitchell* for appellant.

Submitted by *Francis B. Burch, Attorney General, James G. Klair, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *Charles*

*Rountz, Assistant State's Attorney for Baltimore City,* for appellee.

GILBERT, J., delivered the opinion of the Court.

Appellant, John Ingram, who was 16 years old in 1967 when the offense of robbery with a deadly weapon was committed, was convicted of said charge in the Criminal Court of Baltimore on May 27, 1969, and pled guilty to a similar offense on June 9, 1969. The appellant was not then considered to be a juvenile in Baltimore City, although elsewhere in the State he would have been considered such. Appellant received sentences of 20 years and 10 years, respectively, with both sentences to be served consecutively. He was subsequently found to be a defective delinquent and was admitted to the Patuxent Institution.

On March 26, 1971, appellant filed a petition for review under the provisions of the Uniform Post Conviction Procedure Act of Maryland, Article 27, § 645 A-J. On June 1, 1971, Ingram also filed a petition for a Writ of Habeas Corpus. Both petitions were heard before a judge in the Baltimore City Court and the Writ of Habeas Corpus was dismissed. Similar action was taken on the post conviction petition although it was dismissed "without prejudice."

This Court, in an unreported post conviction per curiam opinion, No. 57, September Term, 1971, filed August 6, 1971, reversed the Baltimore City Court's action in dismissing appellant's post conviction petition and remanded the matter to the Circuit Court of Baltimore City, Division of Juvenile Causes, in order that it might hold a waiver hearing for the purpose of determining whether jurisdiction over the appellant should be waived under the provisions of § 70-16 of Article 26. Such a procedure had been erstwhile followed by this Court until the Court of Appeals decided the case of *Franklin v. State,* 264 Md. 62 (1972). In *Franklin,* the Court of Appeals held that:

"* * * the Criminal Court had neither the right nor the power to try a juvenile who had not been sent to it for trial by the Juvenile Court under the statutory waiver procedures. True, when Franklin was tried the statute law of Maryland on its face and the State and Federal decisions as to legislatively declared geographical classifications in Maryland made it appear that the Criminal Court of Baltimore had jurisdiction to try him on the basis that, for the purposes of trial, he was an adult. But as *Greene,* [*v. State,* 11 Md. App. 106], in reliance on the *Long* [*v. Robinson,* 436 F. 2d 1116] decisions, held, he was not such an adult but a child, a juvenile, and as such one who could not be tried in Maryland by a criminal court unless—and only unless—the Juvenile Court so ordered after a proper waiver hearing.

"Since the legislature expressly took away the right and the power of the criminal court to try a juvenile unless the Juvenile Court waives in favor of a criminal trial, the trial of Franklin was no more than form—it had no substance and no validity and the conviction it produced was a nullity. * * *. In our view it could not have life breathed into it, and it could not be made valid and effective *nunc pro tunc* by a waiver made by the Juvenile Court after the trial had been had."

* * *

"The idea that the judge is a microphone who bindingly broadcasts the words that the unchangeable law has spoken into him and that an overruling decision is not a change of law but a correction of erroneous law, still has sufficient validity, utility value and strength to require us, as we see it, to hold that Greene's recognition and acceptance of the *Long* cases must be given retrospective effect sufficient to wipe out Franklin's trial and conviction by the criminal court."

Here, the State concedes that the convictions in the Criminal Court of Baltimore are null and void. They argue, however, that the waiver hearing held on October 21, 1971 complies with the mandate of *Franklin, supra.*

We think that a waiver hearing held after a conviction by the Criminal Court complies with *Franklin* when it is not a *nunc pro tunc* type of hearing, that is to say, that the conviction in the Criminal Court is nullified so that for all intent and purposes the waiver hearing is the initial valid step. What *Franklin* proscribes is a conviction by the Criminal Court and a *subsequent* waiver by the Juvenile Court while the judgment of the Criminal Court is allowed to stand. In short, *Franklin* prohibits an *a posteriori* waiver hearing which seemingly approves an *a priori* action of the Criminal Court. Article 26, § 70-16 (a) provides in pertinent part that the Juvenile Court "* * * may hold a waiver hearing and waive the exclusive jurisdiction conferred by § 70-2, and *may order the child or minor held for trial* under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult. * * *" (Emphasis supplied). The very use of the expression *"may order the child or minor held for trial"* implies an *in futuro* act as distinguished from an antecedent one.

If it be established that an accused was under the age of 18 years at the time of the offense for which he was tried in the Criminal Court of Baltimore, and that the judgment of said court was not final as of May 15, 1969, [*Long v. Robinson, supra*], then the conviction is void because the Criminal Court, absent a valid waiver of the Juvenile Court, was without jurisdiction to try the offender in the first instance.

In the instant case the convictions of appellant on May 27, 1969 and June 9, 1969 are void for the reasons set forth in *Long* and *Franklin.*

The proper procedure to be followed in those cases where a juvenile has been tried in the Criminal Court in violation of *Long* and *Franklin* is to strike the criminal conviction, when requested, and the Juvenile Court should then conduct a waiver hearing in accordance with the

provisions of § 70-16 of Article 26, Maryland Code. If, after said hearing, the juvenile judge determines that the court should waive jurisdiction, the State may then proceed through the normal criminal law process, subject, of course, to the right of the juvenile to appeal to this Court from the Juvenile Court judge's determination. If, on the other hand, the Juvenile Court judge finds that waiver should not be granted, then the matter may proceed through the regular juvenile procedures.

In determining whether or not to waive juvenile jurisdiction, the judge should not consider any findings of fact or the disposition that may have occurred in the voided Criminal Court trial, nor should he consider any subsequent proceedings arising from the Criminal Court trial such as a post conviction petition or petitions or defective delinquency findings.

If the waiver hearing in the case at bar, as a result of our review, were held to be correctly grounded in the law, we would vacate the judgment of the Criminal Court and affirm the waiver order of the Juvenile Court. Here, however, we are confronted with a factual situation to which *State v. Hutchinson*, 260 Md. 227, 233, 271 A. 2d 641 (1970) is inapposite, and we must reverse the waiver order and remand the matter for a new waiver hearing for reasons hereinafter set forth. At the conclusion of the waiver hearing, the Juvenile Court judge, in announcing his findings, stated that he had found compliance with three of the five criteria set forth in § 70-16 of Article 26, and stated in part:

> "If we were to send him to a juvenile institution today for these offenses for which he got thirty years in the criminal court, it would be an open setting and he has already proven that he will run, that he will escape—."

The court, after interruption by the appellant, then said:

> "There is nothing that could prevent it again and certainly an institution cannot treat some-

body if he won't stay there in order to be treated. Now, this is axiomatic, the fact that he has been adjudicated to be a defective delinquent, I think, indicates quite strongly that the juvenile structure is not equipped to deal with this type of individual * * *."

Judge Finan, speaking for the Court of Appeals in *State v. Hutchinson, supra,* said:

"It is true that judges, being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its 'warp and woof'."

\* \* \*

"Of more importance is the historical fact that, although opinion may have been to the contrary elsewhere, it is clear that we have constitutionally reposed our confidence in a trial judge's ability to rule on questions of admissibility of evidence and to then assume the role of trier of fact without having carried over to his factual deliberations a prejudice on the matters contained in the evidence which he may have excluded."

In *Hutchinson,* the Court of Appeals noted that the trial judge had flatly asserted that he was disregarding an inculpatory statement and that he was not basing his verdict on that statement.

It is patent from his above quoted remarks that the Juvenile Court judge did consider the disposition in the Criminal Court, as well as the finding of defective delinquency.

We are not unmindful of the appellant's extensive juvenile record which was considered by the juvenile court

judge, but, because of the judge's obvious reliance upon the proceedings in the Criminal Court, and that occurring posteriorly, we cannot say what effect the same may have had upon him, nor how it affected his decision. We are compelled, under the circumstances, to hold that the appellant's right to a fair and impartial waiver hearing was denied.

> *Judgments of the Criminal Court of May 27, 1969 and June 9, 1969 vacated.*
> *Waiver order of October 21, 1971 reversed for the reasons herein stated, and the matter remanded to the Juvenile Court for a new waiver hearing.*