**James Arthur BROWN, Appellant,**

**v.**

**J. D. COX, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 71-1089.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1973.

Decided June 28, 1973.

Prof. Daniel J. Meador, Charlottesville, Va. (Court-appointed), for appellant.

Robert E. Shepherd, Jr., Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges sitting en banc, on resubmission.

DONALD RUSSELL, Circuit Judge:

This is a *habeas* proceeding instituted by a Virginia prisoner, after exhaustion of state remedies, in order to secure his outright release from a life sentence imposed after conviction for robbery in the Corporation Court of the City of Norfolk. The District Court denied relief.[1] On appeal, the hearing panel filed its opinion,[2] remanding the proceeding for a hearing such as was required in Kemplen v. State of Maryland (4th Cir. 1970), 428 F.2d 169. Rehearing *en banc* was sought and granted. On rehearing, affirmance of the District Court, though not on the grounds stated by it,[3] was agreed on by the *en banc* court. The earlier opinion is accordingly superseded by the following opinion:

The factual background of this proceeding is not in dispute. At the time of the commission of his alleged offense of robbery, the petitioner was 17 years of age. A petition charging him with the offense was initially filed in the Juvenile and Domestic Relations Court of Norfolk (hereinafter referred to as Juvenile Court). It does not affirmatively appear from the Juvenile Court record that either of petitioner's parents was present at any of the proceedings which followed and it is conceded that the Court did not appoint a *guardian ad litem* or counsel to represent him. The Juvenile Court found the petitioner "within the purview of the Juvenile Court" and referred the matter "to the Probation Department for an investigation, to be made in Grand Jury form." The matter was continued until September 3, 1963 to permit the investigation to be made. On September 3, 1963 the Juvenile Court conducted a hearing on the basis of the investigation made by the Probation Department and proceeded to transfer the charges against the petitioner to the Corporation Court of the City of Norfolk for criminal proceedings. The transfer was made under the authority of Section 16.1–176, Virginia Code.[4]

1. The opinion of the District Court is reported at 319 F.Supp. 999.

2. Reported at 4th Cir., 467 F.2d 1255 (1972).

3. The able District Judge did not have the benefit of our opinion in *Kemplen*, filed some months after his decision.

4. "§ 16.1–176. Transfer to other courts; presentment to grand jury; children under fourteen excepted.—(a) If a child fourteen years of age or over is charged with an offense which, if committed by an adult, could be punishable by confinement in the penitentiary the court after an investigation as prescribed in paragraph (b) of this section, and hearing thereon may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult; provided, however, that in the event the juvenile court does not so certify a child fourteen years of age or over, charged with an offense which, if committed by an adult, would be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, the Commonwealth's attorney of the city or county, if he deems it to the public interest, may present the case to the grand jury of the proper court of record, and provided further that if a child fourteen years of age or older who has previously been adjudged to come within the purview of the juvenile and domestic relations court law for committing an offense indicating a viciousness of character, or an offense which, if committed by an adult, could be punishable by confinement in the penitentiary and is subse-

The petitioner was thereupon indicted for robbery in the Norfolk Corporation Court, pled guilty in January, 1964, and was given a life sentence. As a result of *habeas* proceedings begun by the petitioner in 1968, this conviction and sentence were, however, declared null and void because of the failure of the Juvenile Court to appoint a guardian *ad litem* or counsel for the petitioner or to notify the petitioner's parents in connection with the transfer proceedings.[5] The Court did not, however, order the petitioner's release but directed that he be detained to await further orders of the Court. The petitioner at this time was 23 years of age.

Shortly thereafter, the petitioner was re-indicted for the same 1963 robbery, tried before a jury, found guilty and again sentenced to life imprisonment. He appealed, contending that his second trial was void because re-trial as an adult for an offense committed as a juvenile would be inconsistent with the constitutional requirements of due process and equal protection. The ap-

peal was denied on the authority of Pruitt v. Guerry (1969) 210 Va. 268, 170 S.E.2d 1. Continuing to press his claims, petitioner commenced this *habeas corpus* proceeding in the District Court in May 1970. From a dismissal of his petition by the District Court, he appealed to this Court.

### I.

Petitioner raises two claims on account of which he asserts he is entitled to immediate release. First, he urges that the jurisdiction of the Juvenile Court over him and his offense has never been validly terminated and that, in order to terminate it and transfer valid jurisdiction to the Corporation Court, a proper transfer proceeding is necessary. He contends, however, that at this late date, almost ten years after the offense, it is impossible for the Juvenile Court or any other Court to hold a meaningful *nunc pro tunc* transfer hearing in order to effect such a transfer and, under those circumstances, his outright release is the only proper remedy.[6] In addition,

quently charged with committing a felony, the Commonwealth's attorney of the city or county, if he deems it to be in the public interest, may, after a preliminary hearing in the juvenile and domestic relations court, present the case to the grand jury of the proper court of record. It shall be the duty of the Commonwealth's attorney to notify the juvenile and domestic relations court within three days after final adjudication if he deems action by the court of record necessary. Thereafter, the decision as to whether or not to present the case to the grand jury shall be in the sole discretion of the juvenile and domestic relations court. If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate . . . . The ages specified in this section refer to the age of the child or minor at the time of the alleged commission of the offense.

"(b) In all cases under this section the court may, unless such information is otherwise available to it from a prior investigation and report to another court, require an investigation of the physical, mental and social condition and personality of the child or minor and the facts and circumstances surrounding the viola-

tion of the law which is the cause of his being before the court. Such investigation need not include an examination of the child or minor by a physician or psychiatrist unless the court, in its discretion, so directs. If the court requiring the investigation is a juvenile court, such investigation may be made by the agency providing probation service under § 16.1-205; . . . ."

5. *See*, Peyton v. French (1966), 207 Va. 73, 147 S.E.2d 739; Kent v. United States (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84.

6. It is interesting that this claim, when found to be of merit, has resulted in conflicting results from two Circuits. In one, it induced the Court to conclude that *Kent* was not to be given retroactive application. Mordecai v. United States (1969), 137 U.S.App.D.C. 198, 421 F.2d 1133, 1137. The other recognized that under some circumstances the claim would warrant release. Wilson v. Reagan (9th Cir. 1965), 354 F.2d 45, 46; *cf.*, Powell v. Hocker (9th Cir. 1971), 453 F.2d 652, 657, n. 10; James v. Cox (D.C. Va.1971), 323 F.Supp. 15, 24; Miller v. Quatsoe (D.C.Wis.1971), 332 F.Supp. 1269, 1276–1277.

he argues that the hearing before the Juvenile Court put him in jeopardy and any trial of him in the Corporation Court is barred under the constitutional prohibition against double jeopardy.

We find both contentions without merit.

## II.

There is no dispute between the parties over the proposition that the transfer order entered by the Juvenile and Domestic Relations Court in 1963 was invalid for failure to accord the petitioner procedural due process and that the conviction thereafter, on the basis of the petitioner's guilty plea in the Corporation Court, was invalid.[7] The state court has so concluded in declaring that conviction a complete nullity.[8] Had the petitioner been a juvenile in 1968 when his initial sentence was voided, jurisdiction over his offense would have been vested in the Juvenile Court, which could have held a new transfer hearing, conducted in full compliance with the petitioner's constitutional rights.[9] But the petitioner was no longer a juvenile; he was an adult. Thus, the Juvenile Court had no further jurisdiction over him and his offense[10] and he could no longer be dealt with by that Court. But that did not mean that he was "home free" and must be released forthwith because, as the petitioner contends, a reconstructed waiver hearing as contemplated by *Kem-*

*plen* would be impractical. As one Circuit Court has observed in a similar case, "[w]hen a decision in the criminal law is made retroactive, the consequence is not to free all whose convictions are affected. Normally new hearings or new trials will be held in some or all cases." Mordecai v. United States, *supra,* 421 F.2d at 1137. As a matter of fact, this demand for immediate release "is the kind of 'drastic relief' which the supreme court in identical circumstances in *Kent* deemed inappropriate." Knott v. Langlois (1967), 102 R.I. 517, 231 A.2d 767, 773. Thus *Kent,* the foundation for the petitioner's constitutional attack on his earlier sentence, did not require the petitioner's release; rather, after providing for correction of the procedural infirmity in the transfer proceeding it authorized a re-trial. And this is the customary procedure in situations such as that posed here. *Habeas* is not a remedy to be exploited by the guilty in order to escape trial but a procedure intended to secure to guilty and innocent alike a trial free of constitutional defect. Only when the Commonwealth is unwilling to afford the defendant such trial is release proper.[11]

Fundamental fairness, though, demands that the public's right to retry the petitioner as an adult for a crime, committed while he was a juvenile and subject to the processes of the juvenile

---

7. *See,* Ferguson v. Slayton (D.C.Va.1972), 340 F.Supp. 276, 277.

8. This conclusion was recently restated in Jones v. Commonwealth (1972), 213 Va. 425, 192 S.E.2d 775, 777.

9. *Cf.,* Black v. United States (1965), 122 U.S.App.D.C. 393, 355 F.2d 104, 107; In Re Ingram, 15 Md.App. 356, 291 A. 2d 78.

10. *See* Kent v. United States, *supra,* 383 U.S. at 564, 86 S.Ct. at 1059:
  "However petitioner has now passed the age of 21 *and the Juvenile Court can no longer exercise jurisdiction over him.*" (Italics added)
  To same effect: Hight v. Texas (Tex. 1972), 483 S.W.2d 256, 257.

The commentator in 29 U. of Pitts.L. Rev. 756, 765 (1968) states it thus:
  "Just as it is inequitable to try a juvenile twice for essentially the same offense in order that confinement may continue after the child is of age, so it is equally unjust to have one who may have committed a heinous crime to go free merely because he has reached the age of 21 and juvenile jurisdiction has terminated."

11. *See* D'Urbano v. Commonwealth (1963) 345 Mass. 466, 187 N.E.2d 831, 836–837, where the Court stated the reasoning behind the rule that a guilty petitioner in *habeas* has no right "to escape for punishment at the price of the loss of the public right" that the guilty shall be punished.

court system, be conditioned upon a judicial determination of some kind that the petitioner has not been improperly prejudiced by the loss of the opportunity, in a properly conducted hearing, to have opposed a transfer from the Juvenile Court in 1963. Beyond question, the petitioner would have been so prejudiced if at such a hearing it would have been likely a transfer would have been refused. Such a refusal would have meant that in no event could the petitioner have been subjected to any form of restraint beyond his twenty-first year. Only if it could be fairly said that such a transfer would have been made, had a hearing carried out with constitutional safeguards been had, would it be proper to try the petitioner as an adult. Faced with this same issue in *Kemplen*, the Court attempted to fashion a procedure whereby the problem *in that case* might be resolved in fairness to both the public interest and the defendant's individual right to a just determination.

That is the background for *Kemplen* in which we held that, under ordinary circumstances, a determination on this issue should take place in the context of a reconstructed *nunc pro tunc* hearing, in which the Trial Court would decide "what the juvenile court judge would probably have done in light of all the information then available that might reasonably have been proffered by competent counsel." [12] But, as the opinion in *Kemplen* plainly declares, this remedy is not the only remedy, nor is it a remedy necessarily to be applied inflexibly and blindly in all cases. The decision was careful to point out that the remedy adopted in that case was "the proper remedy for *this* petitioner, *on the facts of this case* * * *." [13] (Italics added)

In short, *Kemplen* stands for the principle that, while ordinarily a reconstructed transfer hearing is the appropriate remedy where a prior transfer order of the Juvenile Court has been invalidated on procedural due process grounds and the Juvenile Court has lost jurisdiction of the defendant by reason of his age, each case must be considered on its own facts, and, if some other remedy or determination will not result in fundamental unfairness to the petitioner and is more appropriate under the facts of the case and will contribute to a more expeditious resolution of the issue, that procedure should be adopted.

After a careful review of the facts of this case, we are of the firm opinion that this is not a case requiring a *nunc pro tunc* waiver hearing, as was required in *Kemplen*. We have no difficulty in finding to a moral and legal certainty that no Juvenile Court, on the record in this case, would have denied transfer. The petitioner, in a proceeding in the Juvenile Court before the filing of his 1963 robbery charge, had been treated by the Juvenile Court as an adult. Such a circumstance made transfer presumptively proper in connection with any subsequent charge against the juvenile, unless the juvenile could establish "that it would be in the public interest to dispose of the matter in the Juvenile and Domestic Relations Court." [14] Moreover, the gravity of the petitioner's offense was such that it would be unreasonable to assume that any court would have denied transfer.[15] It must be re-

---

12. *Kemplen, supra,* 428 F.2d at 178.
   *See, also,* Woodall v. Pettibone (4th Cir. 1972), 465 F.2d 49, 53. .

13. *See,* 428 F.2d at 178.

14. In Watts v. Commonwealth (1972), 213 Va. 57, 58, 189 S.E.2d 346, 347, the Court stated that under the Virginia statute, the Juvenile Court, when considering the situation of a prior juvenile offender, is "under a duty to certify the case to the court of record for proper criminal proceedings, in the absence of a finding that it would be in the public interest to dispose of the matter in the Juvenile and Domestic Relations Court."

15. The petitioner's crime was described by the District Court thus:
   "On August 10, 1963, petitioner was 17 years of age. Accompanied by his 14 year old girl friend, they planned to

called, too, that, after transfer, the petitioner pled guilty.[16] The petitioner's offense, by his own admission, was premeditated; it involved acts of shocking brutality; it was a felony of an aggravated character, which, if committed by an adult, would have rendered him liable to a sentence in excess of twenty years. Nor was it an isolated transaction. It was one of several similar robberies committed by the petitioner.

It would be a useless imposition on the Trial Court and an inadmissible waste of valuable judicial time to remand a case as plain as this for a reconstructed *nunc pro tunc* hearing on the propriety of a transfer. Had the Juvenile Court not ordered transfer initially on the basis of such a record, the Commonwealth's attorney would have had authority to apply for transfer in the Corporation Court. In the Corporation Court, it is fair to assume opposition to transfer would not have been successful. Moreover, the circumstances in this case were such that, had transfer been denied either in the Juvenile Court or the Corporation Court, a finding of abuse of discretion would have been in order. Accordingly, we have no difficulty in concluding here that a reconstructed transfer hearing was not required and

that the retrial of the petitioner in 1968, after he had attained the age of twenty-three, was not violative of any Constitutional rights of the petitioner.

### III.

The petitioner asserts a second claim for immediate release. He contends that his conviction in 1968 violates the double jeopardy proscription of the Fifth Amendment.[17] Obviously, this claim is not related to the earlier conviction in the Corporation Court. That conviction has been declared a nullity. It is of no moment that the Virginia Court did so on state rather than federal grounds. The result is the same in either event.[18] Equally clear is the rule that the voiding of the 1964 conviction on collateral attack is no bar to a new prosecution for the same offense.[19] The petitioner's double jeopardy claim must, therefore, find its basis in the proceedings in the Juvenile Court. Such a claim based on proceedings in that Court, raises, as one commentator has aptly observed, "two separate conceptual problems," (1) "whether application of the protection against double jeopardy is appropriate in the juvenile context;" and (2) "at what point jeopardy at-

---

rob a bus driver on the evening in question. The girl boarded the bus and petitioner followed. Petitioner concealed a hatchet in a paper bag and, when reaching in his pocket as if to pay his fare, proceeded to hit the bus driver with the hatchet, thus rendering permanent brain damage and making him incapable of performing any work for the balance of his life." (467 F.2d at 1256, n. 2)

16. Under a respectable line of authority, of which Smith v. Yeager (3d Cir. 1972), 459 F.2d 124, 126–127, is representative this guilty plea, entered after adequate legal advice, would have been deemed a waiver of any infirmity in the transfer proceedings. *See*, also, Willhite v. United States (1960) 108 U.S.App.D.C. 279, 281 F.2d 642, 644 (opinion by then Circuit Judge Burger). Such a holding, had it been adopted by the Virginia Courts, would have validated the first conviction

of the petitioner. *Cf.*, also, Brooks v. Boles (1967) 151 W.Va. 576, 153 S.E.2d 526 and Broadway v. Beto (D.C.Tex. 1971) 338 F.Supp. 827, approved 459 F.2d 483. The Virginia Court, however, found the entire proceeding, including the guilty plea, a nullity.

17. It does not appear from the record that this claim was raised in the District Court. It would not be improper to dismiss the claim on account of such failure to raise it below. That, however, would merely require further litigation. For that reason, we have determined to resolve the claim in this proceeding.

18. United States v. Ball (1896), 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300.

19. United States v. Tateo (1964), 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448.

taches \* \* \* in a juvenile proceeding".[20]

In a number of cases, influenced by the opinions in *Kent* and *Gault*, it was assumed that all constitutional rights as applied in the criminal trials of adults are applicable to juvenile courts. A leading case to this effect is United States v. Dickerson (D.C.1958), 168 F. Supp. 899, rev. 106 U.S.App.D.C. 221, 271 F.2d 487.[21] It is true that in *Kent* the Court required procedural due process in waiver proceedings and in *Gault* it supplemented *Kent* by extending to the juvenile the right to notice of charge, the right to counsel, the right to confront witnesses, and the right against self-incrimination.[22] Later in *Winship* it found that "due process and fair treatment" imposed on the Juvenile courts the requirement of proof beyond a reasonable doubt during the adjudicatory stage of juvenile proceedings.[23] But in this latter case, the Court was careful to point out, as it had done earlier in *Kent*,[24] that its conclusion did not " 'rest[s] entirely on the assumption that all juvenile proceedings are "criminal prosecutions," hence subject to constitutional limitations.' "[25] It emphasized that its ruling was intended to

have "no effect on the procedures distinctive to juvenile proceedings that are employed prior to the adjudicatory hearing" and " 'will not compel the States to abandon or displace any of the substantive benefits of the juvenile process.' "[26] Concurring in that case, Justice Harlan expressed the view that, "[I]t is of great importance, in my view, that procedural strictures not be constitutionally imposed that jeopardize 'the essential elements of the State's purpose' in creating juvenile courts."[27] Chief Justice Burger and Justice Stewart, in dissent, voiced great concern that the decision by imposing such a strict standard of proof might unduly restrict the juvenile courts.

Recently, in McKeiver v. Pennsylvania (1971) 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, the Court, in holding that the guarantee of a jury trial as provided in the Fifth Amendment is not applicable to proceedings in juvenile courts, emphasized anew that it has never been held by it "that *all* rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding (emphasis in opinion)."[28] The Court then proceeded to enunciate the

20. Note, Double Jeopardy in Juvenile Justice, 1971 Wash.U.L.Q. 702.

21. This case is commented on favorably in a Note in 5 Howard L.J. 246 (1959), but in a similar Note in 43 Minn.L.Rev. 1253 at 1257 (1959), the commentator added this warning observation:
    "A problem created by the conclusion that double jeopardy applies to juvenile proceedings is that the necessity of deciding whether to waive jurisdiction to the criminal court before the question of guilt is determined may hinder the desirable procedure of the juvenile correctional system."
    Of course, these comments, as well as *Dickerson* itself preceded *McKeiver*, discussed later, and their conclusions have been substantially undermined by that decision. Note, Double Jeopardy in Juvenile Justice, *supra*, at 703, (1971 Wash. U.L.Q.)

22. In Re Gault (1967), 387 U.S. 1 at 31–57, 87 S.Ct. 1428, 18 L.Ed.2d 527.

23. In Re Winship (1970), 397 U.S. 358 at 359, 90 S.Ct. 1068, 25 L.Ed.2d 368.

24. "We do not mean by this to indicate that the hearing to be held [in juvenile court] must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." (383 U.S. at 562, 86 S.Ct. at 1057)

25. *Winship, supra,* 397 U.S. at 359, n. 1, 90 S.Ct. at 1070.

26. *See,* 397 U.S. at 366–367, 90 S.Ct. at 1074.

27. *See,* 397 U.S. at 375, 90 S.Ct. at 1078.

28. *See,* 403 U.S. at 533 and 541, 91 S.Ct. at 1980 and 1984.
    For a discussion of the unique constitutional status of juvenile courts, as reflected by the decisions in *Gault, Kent, Winship* and *McKeiver, see,* Note, Parens

test for ascertaining to what extent constitutional requirements are to be "super-imposed" on the juvenile process. That test is a two-fold one, namely, whether the application of the right is necessary to the achievement of "fundamental fairness" and whether it will disrupt the juvenile court system.[29] It represents what has been described as a balancing of "the need for the specific constitutional protection with the State's interest in maintaining an independent, benevolent juvenile justice system."[30] Applying that test, the Court found that the requirement for a jury trial, as made obligatory under the Fifth Amendment for criminal trials of adults, "would not strengthen greatly, if at all, the fact-finding function, [of the juvenile court] and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner."[31] The right to a jury trial was not accordingly imposed on proceedings in juvenile courts.

It should be emphasized that in the case under appeal there was no adjudication in the Juvenile Court imposing confinement or restraint on the petitioner. Of course, had that court taken jurisdiction of the petitioner's offense for final disposition and made an adjudication of commitment or confinement, it might be said that, under the test established in *McKeiver*, jeopardy would attach and a later prosecution of the juvenile as an adult in the criminal court would violate "fundamental fairness". A number of cases have so held.[32] But that was not the course of proceedings in the Juvenile Court in this case. The petitioner, after a hearing, was transferred to the Corporation Court and it was that latter Court which alone made an adjudication of petitioner's guilt and imposed punishment on him. The question thus in this case is whether, applying the test established in *McKeiver*, a waiver hearing, with or without testimony, resulting in the transfer of the proceedings to the

Patriae and Statutory Vagueness in the Juvenile Court, 82 Yale L.J. 745 at 748–54 (1973).

29. *See*, 403 U.S. at 547 and 550–551, 91 S.Ct. 1976.

30. Note, 24 Stan.L.Rev. 874, 892 (1972). The commentator, while recognizing that this is the rule as illustrated by *McKeiver*, *Winship*, *Gault* and *Kent*, is critical of the conclusion stated by the Court.

31. *See*, 403 U.S. at 547, 91 S.Ct. at 1987.

32. Hultin v. Beto (5th Cir. 1968) 396 F.2d 216 is illustrative of the line of cases which hold that, if there is an adjudicatory hearing, followed by actual commitment, under a proceeding in the Juvenile Court, jeopardy attaches. In that case, the juvenile was charged with delinquency in the juvenile court, testimony was taken on the charge, the juvenile confessed, the Juvenile Court adjudged him guilty and committed him to a youth institution until he was 21. One· year later, he was tried and convicted in the criminal court for the same offense. In a collateral attack, his conviction in the criminal court was voided, the Court stating :
"'A juvenile cannot "be adjudged a delinquent child and held in custody as such, and, without regard to how he may respond to the guidance and con-

trol afforded him under the [Texas] Juvenile Act, be indicted, tried, and convicted of the identical offense after he reaches the age of 17." * * *'"
*See, also*, M. v. Superior Court of Shasta County (1971), 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664, 668, but *cf.*, In Re Gary Steven J. (1971), 17 Cal.App.3d 704, 95 Cal.Rptr. 185, 189; People in Interest of P.L.V. (Colo.1971), 490 P.2d 685, 687. In both of these latter cases, the Juvenile Court had dismissed the charges and such acquittal was deemed jeopardy.
A commentator has recently summarized this issue thus :
"It would therefore seem to follow that if the guarantee against double jeopardy is applicable to juvenile proceedings in the context now being discussed, it would bar a subsequent criminal prosecution whenever the decision to waive jurisdiction is made after the juvenile court began hearing evidence on the merits of the delinquency petition.
"The majority of courts which have considered the issue have concluded that a subsequent criminal prosecution does not violate the protection against double jeopardy."
Rudstein, Double Jeopardy in Juvenile Proceedings, 14 W. & M.L.Rev. 266, 301 (1972).

criminal court, falls within the jeopardy provision of the Fifth Amendment. In resolving this issue, it is necessary to mark out the place the waiver hearing occupies in the juvenile court system.

Juvenile Courts were established to provide an informal, largely non-adversary type of proceeding, whereby offending juveniles, whose background warranted an assumption that they would respond to rehabilitation, could be rehabilitated without criminal taint. But in so doing the legislature recognized that there would be many cases where such assumption would not be justified. Accordingly, in the model juvenile act, it established "a dual system of justice for the juvenile" to deal with both types of juveniles. If the "particular acts of the child, in connection with a general pattern of behavior and environmental factors, warranted assumption of rehabilitory control by the State," then the Juvenile Court retained jurisdiction and undertook to establish a form of commitment or treatment which would accomplish such rehabilitation. On the other hand, should the Juvenile Court conclude that rehabilitation was unlikely to be successful, it should waive jurisdiction in favor of trial of the juvenile in the criminal court. It was to make that determination that provision for waiver hearings was included in the legislation establishing the juvenile court system.[33]

The real issues in the waiver hearing do not involve the resolution of the juvenile's guilt or innocence.[34] What the Juvenile Court is concerned with at this stage is "the amenability of the child to the rehabilitative measures available to the juvenile court, the necessity of safeguarding the public from the child, and the heinousness of the alleged offense."[35] "A finding of juvenile delinquency upon the basis of the conduct charged is neither required nor authorized" at a juvenile waiver hearing, which should be "limited to one appropriate to the preliminary nature of the question and the criteria for decision which the juvenile court is required to observe."[36] Actually, it has been stated that "in cases coming under the waiver statute the juvenile proceeding is comparable to a preliminary hearing since its purpose is to determine whether the person should be tried as an adult or put within the treatment of the juvenile court."[37]

It is, of course, necessary for the Juvenile Court to have before it at the waiver hearing some information on the gravity and nature of the offense. It must engage in "an inquiry not only into the facts of the alleged offense but also into the question whether the *parens patriae* plan of procedure is desirable and proper in the particular case."[38] Indeed, without such information, the court would have difficulty in complying with the requirement of *Kent* that the transfer order incorporate "a statement of the reasons motivating the waiver including, of course, *a statement of the relevant facts.*" (Italics added)[39]

---

33. *See*, Note, Waiver in the Juvenile Court, 68 Col.L.Rev. 1149 (1968).

34. *See*, Cradle v. Peyton (1967), 208 Va. 243, 156 S.E.2d 874, 877, cert. denied 392 U.S. 945, 88 S.Ct. 2296, 20 L.Ed.2d 1407.

35. State v. Halverson (Iowa 1972), 192 N.W.2d 765, 769. *See, also,* Shornhorst, The Waiver of Juvenile Court Jurisdiction: Kent Revisited, 43 Ind.L.J. 583, 605.

36. State v. Van Buren (1959), 29 N.J. 548, 554–556, 150 A.2d 649, 652–653.

37. Note, Double Jeopardy Applied to Juvenile Proceedings, 43 Minn.L.R. 1253, 1257

(1959). In fact, the Court in Muse v. Slayton (D.C.Va.1971), 333 F.Supp. 1007, 1010, stated that a waiver hearing under the Virginia statute is "comparable to a preliminary hearing which would be given to an adult."

*Cf.*, Note, Double Jeopardy and the Waiver of Jurisdiction in California's Juvenile Courts, 24 Stan.L.R. 874 (1972) and Rudstein, Double Jeopardy in Juvenile Proceedings, 14 W. & M.L.Rev. 266, 300 (1972).

38. Pee v. United States (1959), 107 U.S. App.D.C. 47, 274 F.2d 556, 559.

39. *See*, 383 U.S. at 561, 86 S.Ct. at 1057. *See, also,* United States v. Tate (1972)

Without some facts before it, the Juvenile Court could not pass intelligently on "the seriousness of the alleged offense", whether it "was committed in an aggressive, violent, premeditated or willful manner * * * against persons or against property," as well as "the sophistication and maturity" of the juvenile or his "record and previous history." [40] All these circumstances were to be considered in authorizing a transfer as mandated in *Kent*.

█ It is plain that the waiver hearing, with or without evidence, is a vital and integral procedural step in the processes of the juvenile court system. As such it is designed to achieve fairness both to the public and to the juvenile. To hold that it constituted jeopardy, and to apply to it the rules applicable to the criminal trial on the merits of an adult, would effectively undermine the juvenile court system and would be contrary to the spirit of *McKeiver*. There is no warrant in either *Kent* or *Gault* for any such conclusion. While the Court in *Kent* did not explicitly hold that a waiver hearing with testimony on the factual issues it indicated were germane, (including the gravity of the offense) would not constitute jeopardy thereby preventing any trial of the juvenile on the basis of the transfer, it is inconceivable that the Court would have indicated that a hearing, conducted with proper regard for procedural due process and directed to the subjects indicated in its opinion, was proper if the result of having such a hearing would have been to make unconstitutional a trial subsequently in the criminal court on the basis of the transfer order. If such a waiver, instead of conferring jurisdiction on the Corporation Court, and instead of being a vital preliminary step in the proceedings, should be construed as creating a bar under the Fifth Amendment for subsequent trial of the juvenile in the Corporation Court, the transfer proceedings in effect would frustrate completely the very purpose and scope of the juvenile court system. It would mean either that no juvenile could ever be tried in the criminal courts as an adult, since a transfer proceeding would bar such trial on jeopardy grounds; or, that the entire juvenile court system would have to be abolished lest a few incorrigibles, guilty of serious crimes, escape punishment as adults. Such considerations prompted one Court to conclude that it is "not improper for the Juvenile Court to conduct a hearing before determining whether or not to waive jurisdiction. To hold that jeopardy attached at that point would preclude the full and informal investigation in the interests of the minor and the community which Congress thought necessary to achieve the salutary remedial purposes of a juvenile court system." [41]

People v. Wilson (1972), 7 Ill.App.3d 158, 287 N.E.2d 211, is directly in point. There a juvenile was appealing from a sentence imposed by the criminal court after transfer from the juvenile division. He urged that his conviction was void since, in the waiver hearing, he had been put in constitutional jeopardy. Dismissing the claim, the Court said:

"The hearing in the juvenile division was held for the purpose of effectuating a removal of the case to the criminal division pursuant to Ill.Rev. Stat.1969, ch. 37, par. 702–7(3). All testimony taken at that hearing was solely directed at that goal, thereby

151 U.S.App.D.C. 261, 466 F.2d 432, 433–434.

In Atkins v. State (Ind.1972), 290 N.E. 2d 441, 443, it was held that transfer of a juvenile to criminal court is to be authorized "only when the juvenile court after full hearing determines that the range of dispositions available within the juvenile system are not adequate in the particular case to serve 'the child's welfare and the best interests of the state'" and waiver, under such circumstances, must be "explicitly justified in the waiver order."

40. *See*, 383 U.S. at 567, 86 S.Ct. at 1060.

41. United States v. Dickerson (1959), 106 U.S.App.D.C. 221, 271 F.2d 487, 491–492, reversing 168 F.Supp. 899.

enabling the judge to make an intelligent decision in that regard. Thus, the hearing was not held to adjudicate defendant's delinquency, but was to satisfy the juvenile court judge that the case should have been removed. Because the proceedings in the juvenile division were not 'adjudicatory' in nature, criminal proceedings were not barred." (287 N.E.2d at 213)

This distinction between the transfer or certification proceeding and an adjudicatory or dispositional proceeding in Juvenile Court, as stated in *Wilson*, accords with the Virginia practice. In Cradle v. Peyton, *supra*,[42] the Court dealt with this distinction between the confinement order and the transfer order in juvenile courts in Virginia. A confinement order "imposes a sentence of confinement" and will, under the authorities already cited, constitute jeopardy. On the other hand, "a certification order transfers the case to another court for original determination whether the accused child shall be confined." In such order, the Court makes "no finding of [Cradle's] innocence or guilt, only a finding that he [the juvenile] should stand trial on the merits in another court." [43]

We reach a similar conclusion in this case. After all, the waiver hearing, held, as the order of the Juvenile Judge in this very case stated, in the nature of a "Grand Jury" hearing, was similar to a preliminary hearing in the criminal courts and no more amounts to jeopardy within the intendment of the Fifth Amendment than does a preliminary hearing in the criminal courts.[44] Nor do we find anything in Toth v. Quarles (1955) 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, cited by the petitioner, that would cause a contrary result. As a matter of fact, *Toth* seems to support the result reached here. In that case, it was held that, after one had been discharged from the military service, he could not be tried by military court martial for any criminal offense committed while in the military service. But Justice Black specifically declared that the fact the discharged soldier was not amenable to military processes did not preclude his trial in the criminal courts for his offense. This is consistent with our conclusions here. Since the petitioner was over twenty-one, the Juvenile Court had no jurisdiction to deal with him but he was plainly amenable to trial in the criminal court as an adult for an offense committed by him while a juvenile.

Affirmed.

BOREMAN, Senior Circuit Judge (dissenting):

This appeal was originally considered by a panel consisting of Haynsworth, Chief Judge, Boreman, Senior Circuit Judge, and Russell, Circuit Judge. I was designated to write for the court and, after an extended period of consideration and study, I prepared and submitted an opinion which was accepted and adopted by the panel. Brown v. Cox, 467 F.2d 1255 (4th Cir., 1972).

Subsequently, the court decided to rehear the case in banc and Judge Russell was designated to write for the court. My colleagues who joined in the original opinion have been persuaded to approve and accept Judge Russell's opinion on rehearing.

After careful consideration I find myself unpersuaded and in disagreement. In dissenting I simply adhere to my views expressed in the original panel decision, 467 F.2d 1255.

---

**42.** This decision concluded that *Gault* was not retroactive. To this extent, the decision has not been sustained in federal *habeas* proceedings. *See,* Cradle v. Cox (D.C.Va.1971), 327 F.Supp. 1169. But its construction of the Virginia law and its exposition of Virginia procedure must be considered authoritative.

**43.** *See,* 156 S.E.2d 876–877.

**44.** *See* Collins v. Loisel (1923), 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062.