**Nelson James LEWIS, Petitioner,**

**v.**

**James F. HOWARD, Director Division of Corrections, and K. R. Purvis, Superintendent, Respondents.**

**Civ. A. No. 73-C-25-C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

April 3, 1974.

L. B. Chandler, Jr., Charlottesville, Va., for petitioner.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondents.

DALTON, District Judge.

On May 30, 1972, proceedings were initiated against the petitioner, then seventeen years old, in the Eighth Regional Juvenile and Domestic Relations Court of the City of Charlottesville, Virginia, on two charges of grand larceny and on another charge of feloniously breaking and entering a dwelling in the nighttime with the intent to commit larceny therein. At a hearing held on June 9th the petitions were determined to be true and on June 16th, pursuant to § 16.1–176.1 [1] of the Virginia Code, the Juvenile Court certified that it was in the public interest for the matter to be disposed of in a juvenile proceeding. Consequently, the Juvenile Judge determined that the welfare and best interests of the petitioner required that the State should assume his guardianship and ordered that petitioner be committed to the State Department of Welfare and Institutions for an indeterminate period not to exceed his 21st birthday. The Assistant Commonwealth's Attorney for the City of Charlottesville, pursuant to § 16.1–176(a) [2] of the Virginia Code, notified

1. This section, which was repealed in 1973, provided:

If a juvenile sixteen years of age or over, who has been previously committed to any juvenile training school in this State or any other state, is charged with an offense which, if committed by an adult, could be punishable by death or confinement in the penitentiary, the case shall be certified for proper criminal proceedings, if probable cause be found, to the appropriate court of record having jurisdiction of such offense if committed by an adult, unless the juvenile and domestic relations court shall find and shall certify in its order that it is in the public interest for the matter to be disposed of therein.

2. At the time of petitioner's hearing this section provided:

(a) If a child fourteen years of age or over is charged with an offense which, if committed by an adult would be punishable by confinement in the penitentiary the court after an investigation as prescribed in paragraph (b) of this section, and hearing thereon may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult; provided, however, that in the event the juvenile court does not so certify a child fourteen years of age or over, charged with an offense which, if committed by an adult, would be punisha-

the Juvenile Judge that he deemed action by the court of record necessary, and therefore intended to seek a grand jury indictment. Upon submission to a grand jury, the petitioner waas indicted for offenses identical to those considered in the juvenile proceeding and was convicted in an adult criminal proceeding on July 13, 1972, and sentenced to six years imprisonment in the state penitentiary.

Herein, the petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction on two grounds. Initially, he asserts that § 16.1–176(a) of the Virginia Code, which permits the Commonwealth's Attorney to certify a juvenile over the age of fourteen years to a grand jury in the event the juvenile court does not certify, where the juvenile is charged with an offense which, if committed by an adult would be punishable by death or confinement in the penitentiary for life or for a period of twenty years, is violative of the due process provisions of the Fifth Amendment and the due process and fundamental fairness provisions of the Fourteenth Amendment. In response, the State argues petitioner has failed to exhaust his available state court remedies with regard to this contention. Since petitioner's second contention is determinative of this controversy, the court does not reach the exhaustion question, nor the issue proferred by petitioner's allegation.

In his second allegation, petitioner contends that his trial and conviction as an adult in the Corporation Court of the City of Charlottesville after the Juvenile Court's commitment order was in violation of the Fifth Amendment prohibition against double jeopardy. The State, in its motion to dismiss, admits that petitioner has presented this claim to the Supreme Court of Virginia, consequently, petitioner has exhausted his state remedies and this issue is ready for disposition.

Historically, a juvenile court proceeding succeeded by an adult conviction for the same offense has not been constitutionally defective. Juvenile proceedings have been viewed as civil, rather than criminal in nature, and thus, no jeopardy attached to any proceeding in the juvenile court. Numerous courts, however, have realized that this distinction is often artificial, and have increasingly recognized the need to insure that the fundamental elementals of due process are accorded juveniles.

Three recent Supreme Court decisions have greatly expanded the rights of juveniles in juvenile court proceedings, (Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (procedural due process required in waiver proceedings); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile has the right to notice of the charge, right to counsel, right to confront witnesses and right against self-

ble by death or confinement in the penitentiary for life or a period of twenty years or more, the Commonwealth's attorney of the city or county, if he deems it to the public interest, may present the case to the grand jury of the proper court of record, and provided further that if a child fourteen years of age or older who has previously been adjudged to come within the purview of the juvenile and domestic relations court law for committing an offense indicating a viciousness of character, or an offense which, if committed by an adult, could be punishable by confinement in the penitentiary and is subsequently charged with committing a felony, the Commonwealth's attorney of the city or county, if he deems it to be in the public interest, may, after a preliminary hearing in the juvenile and domestic relations court,

present the case to the grand jury of the proper court of record. It shall be the duty of the Commonwealth's attorney to notify the juvenile and domestic relations court within three days after final adjudication if he deems action by the court of record necessary. Thereafter, the decision as to whether or not to present the case to the grand jury shall be in the sole discretion of the juvenile and domestic relations court. If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate.

The section was rewritten in 1973. One of the changes requires the Commonwealth's attorney to obtain the approval of the proper court of record prior to seeking a grand jury indictment.

incrimination); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (requirement of proof beyond a reasonable doubt during the adjudicatory stage of juvenile proceedings), nonetheless, not all rights constitutionally assured to an adult accused of crime also are to be enforced in a delinquency proceeding. E. g., McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed. 2d 547 (1971) (guarantee of a jury trial is not applicable in juvenile proceedings).

The prohibition against double jeopardy is a constitutional provision which the Supreme Court has not yet held applicable to juvenile proceedings. Several courts, nevertheless, have invalidated subsequent adult convictions finding violation of the fundamental fairness and due process requirements of the Fourteenth Amendment. These cases, however, involved extraordinary circumstances not present in this controversy. E. g., Hultin v. Beto, 396 F.2d 216 (5th Cir. 1968); Sawyer v. Hauck, 245 F.Supp. 55 (W.D.Tex.1965); Garza v. State, 369 S.W.2d 36 (Tex.Cr.App.1963).

Furthermore, several state courts have ruled that a juvenile adjudicatory proceeding exposes the juvenile to jeopardy so that a subsequent adult proceeding for the same offense constitutes double jeopardy in violation of the Fifth Amendment. M. v. Superior Ct., 4 Cal. 3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971); State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); Collins v. Texas, 429 S.W.2d 650 (Tex.Civ.App.1968). Additionally, the U. S. District Court for the District of Columbia has held the 5th Amendment prohibition against double jeopardy applicable to juvenile proceedings. United States v. Dickerson, 168 F.Supp. 899 (D.C.D.C.1959). Although the Court of Appeals for the District of Columbia reversed because only a preliminary hearing had been conducted in order to set a date for trial if the allegations of the petition were denied or to continue the case pending completion of a full social study and recommendations, the opinion implied that had the juvenile proceeding reached the stage at which the juvenile's liberty had been placed in jeopardy the lower court opinion would have been upheld. 106 U.S.App.D.C. 221, 271 F.2d 487, 490 (1959). Several months ago, the Fifth Circuit Court of Appeals ruled, in a situation analogous to petitioner's, that criminal prosecution of a juvenile after an adjudication and commitment in a juvenile proceeding violates the former jeopardy clause of the fifth Amendment. Fain v. Duff, 488 F.2d 218, 73–1933 (5th Cir., 1973).

Our Court of Appeals appears ready to adopt a similar position. In an opinion rendered on June 28, 1973, the Fourth Circuit considered the applicability of the double jeopardy clause to juvenile court proceedings. Brown v. Cox, 481 F.2d 622 (4th Cir. 1973). In denying the Virginia prisoner's habeas petition, the Court stressed the distinction between a "transfer or certification proceeding and an adjudicatory or dispositional proceeding" in juvenile court. The Court declared:

> It should be emphasized that in the case under appeal there was no adjudication in the Juvenile Court imposing confinement or restraint on the petitioner. *Of course, had that court taken jurisdiction of the petitioner's offense for final disposition and made an adjudication of commitment or confinement, it might be said that, under the test established in McKeiver, jeopardy would attach and a later prosecution of the juvenile as an adult in criminal court would violate "fundamental fairness".* A number of cases have so held. But that was not the course of proceedings in the Juvenile Court in this case. The petitioner, after a hearing, was transferred to the Corporation Court and it was that latter Court which alone made an adjudication of petitioner's guilt and imposed punishment on him.

481 F.2d at 630. (emphasis supplied).

The juvenile proceeding involving petitioner was quite different from that in Brown. In Brown, the juvenile court

waived its jurisdiction pursuant to § 16.-1–176, certifying the juvenile for adult criminal proceedings without reaching the adjudicatory or commitment stage. Conversely, the petitions against petitioner were adjudicated to be true and he was committed to the State Department of Welfare and Institutions. This determination authorized the imposition of significant restrictions on petitioner's liberty, as would any commitment order in a juvenile proceeding. Although a decree finding a child within the purview of the juvenile law may result in the juvenile being allowed to return to his home, it may also result in incarceration until age 21. § 16.1–178. A commitment order, therefore, exposes the juvenile to jeopardy. To permit the State, as it did in petitioner's case, to subject the juvenile to a plenary juvenile procedure resulting in his commitment to a juvenile agency, and then indict and prosecute him as an adult would be fundamentally unfair. See 403 U.S. at 547, 550–551, 91 S.Ct. 1976.

Additionally, the imposition of this constitutional requirement will not disrupt the juvenile court system. *See Id.* In 1973 the State legislature rewrote § 16.1–176, significantly altering Virginia juvenile court procedure. In petitioner's proceeding, the Charlottesville Juvenile Court did not rule on whether to retain jurisdiction or certify petitioner for criminal proceedings until the hearing on June 16, 1972, during which it also issued its commitment order. Today this could not occur, for prior to hearing evidence on the merits, the juvenile court is required to conduct a hearing on whether the juvenile should be transferred to a court of record or retained within the jurisdiction of the juvenile court. § 16.1–176(a)(2). If the juvenile court decides to retain jurisdiction, the Commonwealth's Attorney may, within three days of this determination, notify the court of his intention to seek removal to the proper court of record having criminal jurisdiction. Within three days of receipt of this notice, the juvenile court must forward all records to the court of record, which shall, within ten days of receipt of the records, enter an order either remanding the case to the juvenile court or advising the Commonwealth's Attorney that he may seek an indictment. If the grand jury returns a true bill the jurisdiction of the juvenile court is terminated. § 16.1–176(e). Consequently, the problem of double jeopardy has been eliminated. Once the Commonwealth's Attorney indicates his intention to seek an indictment the juvenile proceeding is halted before reaching the commitment stage. If the Commonwealth's Attorney is successful, the juvenile is exposed initially to jeopardy in an adult proceeding. If not, the juvenile proceeding continues with the juvenile confident that the discipline imposed will result only from the juvenile proceeding.

For the aforementioned reasons the court finds that petitioner's constitutional rights were violated since he was twice placed in jeopardy. Petitioner's application for a writ of habeas corpus is therefore granted and his conviction in the Corporation Court of the City of Charlottesville, Virginia on July 13, 1972 nullified. However, since petitioner's juvenile proceeding was proper and as he is not yet 21 years old, the commitment order of the Eighth Regional Juvenile and Domestic Relations Court of the City of Charlottesville remains effective. Petitioner, therefore, is within the care and custody of the State Board of Welfare and Institutions.