**UNITED STATES of America,**
**Appellee,**

v.

**Arcadio Maldonado GARCIA, Appellant.**

**No. 354, Docket 30676.**

United States Court of Appeals
Second Circuit.

Argued March 7, 1967.

Decided May 22, 1967.

---

John R. Wing, Robert G. Morvillo, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Phylis Skloot Bamberger, Anthony F. Marra, New York City, for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction entered after a jury verdict returned in the United States District Court for the Southern District of New York. Appellant Garcia was found guilty of a violation of 18 U.S.C. § 111. He was indicted for having assaulted with a deadly and dangerous weapon a federal narcotics agent who at the time of the assault was engaged in the performance of his duties.

Narcotics agent Scrocca testified for the Government, and his testimony was that on the evening of March 12, 1965 he and federal narcotics agent McLynn observed an informant of theirs whom Scrocca termed a "confidential informant" emerge from an automobile driven

by the appellant. After the informant alighted Garcia drove on, the agents following him in their government car. Both cars stopping at a red light, the two agents stepped out of theirs and approached Garcia's. McLynn went to the passenger side and Scrocca to the driver's side of Garcia's car, Scrocca exhibiting his badge and identifying himself to Garcia as he approached. Garcia forthwith accelerated his car and turned it sharply to the left, causing the car's left rear fender to hit Scrocca and knock him to the ground. Garcia then fled the scene, traveling at high speed and going through several red lights. The agents pursued in their car, overtook Garcia after he had cut through a side street from one avenue to another, had smashed into a parked car, and had continued speeding on for several blocks. After a bit of a struggle with him the agents arrested him. When arrested he explained his flight by telling the agents that he had thought Scrocca was a stick-up man.

Garcia was indicted on March 26th for assault for knocking down Scrocca. He pleaded not guilty and was released on bond.

Barry Quinones, another federal narcotics agent, also testified for the Government. Over defendant's objection he stated that while he was working on an undercover assignment in New Jersey on April 16th he met the appellant. His testimony was that at this time he had no knowledge of Garcia's prior arrest or that Garcia was under an indictment in New York. However, in the course of their conversation, ostensibly as fellow narcotics peddlers, Quinones asked Garcia whether he had ever been in trouble with the police. Garcia recounted that he had been, and indeed currently was in trouble, for not too long before he had purchased some heroin in New York and soon after he had made the purchase two federal agents approached his car and identified themselves as agents; he attempted to get away so as to avoid being caught with the narcotics in his possession, and in so doing he intentionally drove his car at the agents, and that

at the first turn that he made after this he disposed of the heroin because it was better to lose the money and the narcotics than to go to prison. Because Quinones in his undercover role did not give Garcia any of the warnings to be given before a police interrogation may be conducted, and because Garcia's attorney was not present during this conversation, defendant sought to suppress this testimony.

The defense case consisted of testimony by Garcia and by one local corroborating witness named Rivera that Scrocca had driven up behind Garcia with a blonde woman and had approached Garcia's car with a gun in hand and without identifying himself. Garcia testified that he drove away from Scrocca at 30 miles per hour in a straight direction. He denied hitting Scrocca and denied throwing anything out of the car. He also denied having seen agent McLynn prior to the trial; he denied making the statement to Quinones, which Quinones testified about; and he denied having any narcotics in his possession on the night of March 12th.

The jury's verdict resolved all the conflicts in the testimony against the appellant, and we need only consider the two issues appellant raises relative to the admission of evidence in the Government's case, which evidence it is claimed should not have been allowed to go to the jury.

Appellant claims that admission of the post-indictment statements to agent Quinones which the agent testified appellant made to him violated appellant's Sixth Amendment right to counsel as defined by the United States Supreme Court in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). There is some question whether appellant properly preserved this claim by specific and timely objection as required by United States v. Indiviglio, 352 F.2d 276, 280 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed. 2d 663 (1966), but we will pass over this procedural issue because it is clear that the *Massiah* rule does not apply to the situation here.

In *Massiah*, after Massiah and a codefendant had been indicted, the codefendant agreed without Massiah's knowledge to cooperate with the Government. The codefendant allowed a government agent to install a secret listening device in his automobile and then he deliberately engaged Massiah in a conversation about the crime for which they both had been indicted so that an eavesdropping government agent could hear Massiah make incriminating statements about that crime. The Court held that this affirmative government conduct violated Massiah's Sixth Amendment right. However, the Court went on to say:

> "We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the *circumstances* here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial." 377 U.S. at 207, 84 S.Ct. at 1203.

■■ *Massiah* was thus not aimed at all post-indictment evidence gathered by the prosecution, but at the narrow situation where, after indictment, law enforcement authorities have "deliberately elicited" [1] incriminating statements from a defendant by direct interrogation or by surreptitious means. The rule does not apply to spontaneous or voluntary statements made by the defendant in the presence of government agents, United States v. Accardi, 342 F.2d 697, 701 (2 Cir.), cert. denied, 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965); United States v. Gardner, 347 F.2d 405 (7 Cir. 1965), cert. denied, 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529 (1966); Gascar v. United States, 356 F.2d 101, 102–103 (9 Cir. 1965), cert. denied, 385 U.S. 865, 87 S.Ct. 125, 17 L.Ed.2d 92 (1966), or when the

person hearing the statement is not a government agent at the time the statement is made. Paroutian v. United States, 370 F.2d 631 (2 Cir.), cert. denied, 387 U.S. 943, 87 S.Ct. 2077, 18 L.Ed.2d 1331 (1967). Nor should it apply in a case in which the questioner was completely unaware of the existence of the indictment and was not seeking information about the crime the indictment charged had been committed. *Massiah* does not immunize a defendant from normal investigation techniques after indictment, United States v. Edwards, 366 F.2d 853, 873 (2 Cir. 1966); it only protects against deliberate efforts of law enforcement agents which are specifically aimed at eliciting incriminating statements relative to the crime under indictment. Cf. Escobedo v. State of Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Certainly in a case like this where the agent is unaware of the crime under indictment, and of the existence of an indictment, he cannot be said to be deliberately eliciting a statement in violation of *Massiah*. Garcia's statements to Quinones thus were properly admitted in evidence.

■ Garcia's other claim is that he was prejudiced by agent Scrocca's use of the term "confidential informant" to refer to the person who got out of Garcia's car before the chase because the use of this term implied that Garcia was involved with the narcotic traffic. We question whether Garcia's alleged involvement with the narcotic traffic, despite a possible prejudicial effect on the jury, was not admissible to show his motive for the assault. But what was complained of here could not have prejudiced defendant, for the court charged the jury not to draw any inferences from this testimony and this warning was sufficient to remove any prejudice if any prejudice there were. See Delli Paoli v. United States, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); United States v. Gorman, 355 F.2d 151, 153 (2 Cir.), cert. denied, 384 U.S. 1024, 86

---

1. 377 U.S. at 206, 84 S.Ct. 1199.

S.Ct. 1962, 16 L.Ed.2d 1027 (1965). In any event, the testimony of Quinones which was properly before the jury and, though objected to, was not objected to on this ground, brought the possibility of Garcia's involvement in the narcotic traffic to the attention of the jury much more forcibly than the oblique references objected to in Scrocca's testimony. We find no merit in either of defendant's claims of error.

The conviction is affirmed.