COMMONWEALTH *vs.* GERALD FRONGILLO.

Suffolk.   February 3, 1971. — April 1, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Evidence,* Admissions and confessions.   *Constitutional Law,* Admissions
and confessions.   *Narcotic Drugs.   Error,* Whether error harmful.

At the trial of a complaint for unlawful possession of heroin against a
defendant who had been arrested in an apartment, given the *Miranda*
warning, and taken to a police station, there was no violation of the
right against self incrimination under the Fifth Amendment to the
Federal Constitution in admitting in evidence a statement, volunteered
by the defendant as the arresting officer was passing the defendant's
cell, indicating that the defendant had thrown heroin out of his bed-
room window and requesting police to find it before it was found by
youngsters in the neighborhood.   [135-136]

At the trial of a criminal complaint in the Superior Court upon appeal
from a conviction in a District Court, there was no error in the admis-
sion in evidence of a repetitive, incriminating statement to a police
officer voluntarily made by the defendant in the absence of counsel
and after such conviction with the hope of help on disposition and
with complete knowledge of his constitutional rights.   [137]

It was within the discretion of the judge at a trial for unlawful possession
of a hypodermic needle and syringe to permit a police officer who
searched an apartment to testify that a room in which narcotics para-
phernalia admitted in evidence were found was the defendant's bed-
room; and admissions by the defendant that he threw heroin out of
his window, together with evidence that he and another attempted
to dispose of an entire narcotics kit, warranted conviction of the de-
fendant.   [137-138]

Any error on the part of the judge at a criminal trial, in eliciting in the
jury's presence irrelevant testimony from a police officer that a reli-
able informant whose information led the officer to procure a warrant
to search the defendant's apartment had provided information leading
to an arrest and conviction in the past, was harmless.   [138-139]

There was no prejudicial error at a criminal trial in the judge's further
instructions simply cautioning the jury to rely only upon the evidence
introduced and not to speculate, even if the defendant's counsel was
not present during such instructions.   [139]

COMPLAINTS received and sworn to in the District Court
of Chelsea on July 3, 1969, and August 5, 1969.

Upon appeal to the Superior Court the cases were tried before *Smith,* J.

*Alexander Whiteside, II* (*Reuben Goodman* with him) for the defendant.

*Thomas J. Mundy,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant appeals under the provisions of G. L. c. 278, §§ 33A–33G, from convictions for unlawful possession of heroin and unlawful possession of a hypodermic needle and syringe.   The trial judge directed a verdict of not guilty on a complaint charging the defendant with carrying a dangerous weapon.

The pertinent evidence is summarized:  On July 3, 1969, Sergeant Delaney of the Massachusetts State police secured a search warrant for an apartment at 2 Clinton Court, Chelsea.   About 9 A.M., on the same day Inspector Casoli and Sergeants Spellman, Sweeney and Keating went to the premises.   Sergeant Spellman knocked on the door of the apartment, identified himself and stated that he had a search warrant for that apartment.   The police then observed that the peephole in the door was opened and closed, and they heard a noise "like feet running" within the apartment. The police forced the door.   Upon entering, Inspector Casoli saw one Larry Dahlquist running down the hallway.   Casoli ran after him and caught up with him in the bathroom.   The toilet had been flushed and Inspector Casoli retrieved a syringe and needle from the toilet bowl just before they went down.   A laboratory analysis revealed a residue of an opium derivative considered to be a narcotic under G. L. c. 94, § 197.   Sergeant Keating recovered four glassine bags filled with heroin from the tank above the toilet.

Upon entering the apartment, Sergeant Spellman went to a bedroom identified as the defendant's.   As Spellman was entering the bedroom the defendant, Frongillo, passed him.   The defendant had something in his hand which he attempted to conceal under a pillow.   He sat on the edge of the bed.   Spellman turned over the pillow and recovered a switchblade knife and a portable radio.   In searching the

room Spellman discovered empty glassine bags in the dresser, a pound of confectioners' sugar and a spoon and "cooker" on the dresser which upon analysis revealed a residue of a narcotic of opium derivative. The defendant was placed under arrest by Sergeant Spellman and he was given the *Miranda* warning. Frongillo testified that he understood the *Miranda* warning and made no statement but, at the police station, he said he wanted an attorney. At the trial Spellman testified that while at the defendant's home he advised him not to say anything until his mother arrived. Spellman had known the defendant since he was a boy and had known his mother for at least five years. According to Spellman's testimony the defendant, after being taken to the police station, volunteered[1] to him the information that he had thrown out thirty "decks" of heroin through a hole in the screen in his bedroom and requested that the police find the heroin before the youngsters in the neighborhood found it. Spellman himself went back to the scene but could not find the heroin. The statement by the defendant to Sergeant Spellman was admitted in evidence over the defendant's objection and exception.

During the trial, a voir dire was held to determine the admissibility of a statement made by the defendant at the District Court of Chelsea shortly after being found guilty on the complaints. At the voir dire, Inspector Casoli testified that he had been in the District Court of Chelsea either at the end of July or the beginning of August, 1969, and that at that time the defendant had approached him and Sergeant Delaney and told them that he had thrown thirty "decks" of heroin from a window just prior to his arrest. The defendant had said that he would not like to go to jail and, if he could help them, he would.

Sergeant Delaney testified at the voir dire that on or about August 1, 1969, he and Casoli were on their way out of the court house when the defendant and his mother ap-

---

[1] The judge asked, "Did he say anything without being asked a question?" The witness replied, "Yes, sir; he did." (Then followed the defendant's statement about throwing out thirty "decks" of heroin.)

proached them. The defendant said that he wanted to speak to Delaney and Casoli alone. There followed a general conversation regarding drug traffic in Chelsea. Then there was further conversation to the effect that "if he cooperated with us in trying to stop some of this trafficking, that we would bring this to the Court's attention in regards to disposition of his case." Delaney further testified that "he was trying to establish with us that he was going to level with us. At this time, he did say, jokingly, that Spellman was rather slow in getting into his room, and he [Spellman] was very much concerned with a switchblade knife, and that if [Spellman] had only been a little quicker and a little more concerned with the junk, he would have got thirty decks of skag — he used the word either skag or heroin — that he had thrown through a little hole in the window. He was joking about this."

The defendant testified at the voir dire that his conversation with Delaney and Casoli took place in a room in the police station prior to his appearance in court on or about August 1. He had asked to see Delaney to "work out a deal." They told him that they could help him and described to him the evils of the State prison at Walpole. Consequently, the defendant told them about throwing the heroin out the window. He denied making a similar statement to Sergeant Spellman on the day of his arrest.

At the conclusion of the voir dire, the judge ruled that the statement made to Delaney and Casoli was voluntary.

1. The defendant contends that admission of Sergeant Spellman's testimony about a jail cell conversation on July 3, 1969, with the defendant was in violation of the defendant's Fifth Amendment rights. We disagree. The evidence supports a finding that the defendant's statements at that time were made voluntarily and with a full understanding of his constitutional rights. The defendant was fully apprised of his rights by Sergeant Spellman, who gave him the *Miranda* warning immediately after his arrest. The defendant himself admitted that he understood the warning and told Sergeant Spellman that he did. The admission in

question occurred during a conversation as Sergeant
Spellman was passing through the cell block and not during
the course of custodial interrogation. Moreover, the de-
fendant had an apparent motive for speaking up since he
wanted to prevent youngsters in the neighborhood from
picking up the bags of heroin. Statements given freely and
voluntarily are admissible in evidence. *Miranda* v. *Arizona,*
384 U. S. 436, 478. *Commonwealth* v. *Scott,* 355 Mass. 471,
478–479. See *Commonwealth* v. *Rawlins,* 352 Mass. 293, 298.

2. The defendant contends that the trial judge erred in
admitting testimony from Inspector Casoli and Sergeant
Delaney concerning a statement made by the defendant at
the District Court of Chelsea. The remarks by the de-
fendant were allegedly made after his conviction in the
District Court, a stage of proceedings even more advanced
than that immediately following indictment. The de-
fendant argues that *Massiah* v. *United States,* 377 U. S. 201,
requires the exclusion of such a "post-indictment" state-
ment made in the absence of counsel. We recognize that
there are conflicting decisions as to the precise scope of the
*Massiah* case. Some cases have broadly interpreted the
*Massiah* case in light of the Supreme Court's per curiam
reversal of *State* v. *McLeod,* 1 Ohio St. 2d 60, by *McLeod* v.
*Ohio,* 381 U. S. 356. See e.g. *Hancock* v. *White,* 378 F. 2d
479 (1st Cir.); *United States ex rel. O'Connor* v. *New Jersey,*
405 F. 2d 632 (3d Cir.), cert. den. sub nom. *Yeager* v.
*O'Connor,* 395 U. S. 923. See also *State* v. *Green,* 46 N. J. 192.
Other cases have given a limited interpretation to the
*Massiah* and *McLeod* cases. See e.g. *United States* v. *Garcia,*
377 F. 2d 321 (2d Cir.), cert. den. sub nom. *Garcia* v. *United
States,* 389 U. S. 991; *Arrington* v. *Maxwell,* 409 F. 2d 849
(6th Cir.); *United States* v. *De Loy,* 421 F. 2d 900 (5th Cir.);
*United States* v. *Crisp,* 435 F. 2d 354 (7th Cir.). Although
it is clear that the *Massiah* case may not be confined to cir-
cumstances of surreptitious post-indictment interrogation,
we decline to accept an interpretation of the *Massiah* and
*McLeod* cases which would require automatic exclusion of
all post-indictment incriminating statements made in the

absence of counsel. We think that such a sweeping rule is hazardous in that it fails to take account of the special facts that arise in each new case. The *Massiah* and *McLeod* cases must be read in light of the Supreme Court's subsequent decision in *Miranda* v. *Arizona,* 384 U. S. 436, 478, which expressly recognized that, "Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." In the present case, the defendant himself admitted that he deliberately sought out Sergeant Delaney in the hope that Delaney might be able to help him. The defendant was "willing to cooperate with him" so that he would put in a good word for the defendant. The defendant admitted that, with this hope, he told Delaney about throwing the thirty "decks" of heroin out the window. Delaney had testified that the defendant made the statement in joking about Spellman's failure to get the heroin. The judge was fully warranted in finding that the defendant's statement was voluntary and made with complete knowledge of his constitutional rights; as such, it is admissible in evidence. See *Arrington* v. *Maxwell,* 409 F. 2d 849 (6th Cir.); *United States* v. *Crisp,* 435 F. 2d 354 (7th Cir.). Compare *Commonwealth* v. *McCarthy,* 348 Mass. 7, 11–12 (deliberate, direct police interrogation after indictment); *Commonwealth* v. *Kleciak,* 350 Mass. 679, 686 (not a post-indictment interrogation); *Commonwealth* v. *French,* 357 Mass. 356, 386–387. We also note that the defendant's statement to Delaney and Casoli was cumulative as it merely repeated the substance of the statement made to Spellman shortly after the defendant's arrest.

3. The defendant claims that the trial judge erred in denying his motion to strike Inspector Casoli's testimony that the room where a dresser containing a spoon, a "cooker," six glassine bags and a box of confectioners' sugar (all introduced into evidence) was located ". . . was later identified as the Frongillo boy's bedroom." The defendant further contends that it was error to deny his motions for directed verdicts because there was insufficient evidence to warrant convictions for possession of the hypodermic needle

and syringe and possession of heroin. There is no merit to the defendant's arguments. In the context of all the evidence the witness could give his impression as to who was the occupant of the bedroom. The admission of such testimony was within the discretion of the trial judge. See *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 280. Moreover, there was other evidence that the defendant was the occupant of the bedroom.[2]

Irrespective of the question whether the room identified by Inspector Casoli was in fact the defendant's bedroom, there was ample evidence to support a finding that the defendant had constructive possession of the hypodermic needle and syringe. See *Commonwealth* v. *Conlin*, 188 Mass. 282; *Commonwealth* v. *Guerro*, 357 Mass. 741, 752–753; *Jason* v. *Maryland*, 9 Md. App. 102. See generally annotation, 91 A. L. R. 2d. 810. The defendant's admissions to the effect that he threw thirty "decks" of heroin out the window obviously support a finding that he had actual possession of the heroin. See *Commonwealth* v. *Harvard*, 356 Mass. 452, 457–458. These admissions together with all of the other evidence strongly tend to establish a joint effort on the part of the defendant and Dahlquist to dispose of the entire narcotics kit. We find no error.

4. The defendant claims that the trial judge erred in questioning Sergeant Delaney in the presence of the jury concerning the reliability of the informant whose information led to the procuring of the warrant to search the defendant's apartment. Although this testimony is irrelevant, it is not prejudicial. All that was shown by the testimony was that the informant had provided information leading to an arrest and conviction in the past. There is nothing in

---

[2] The defendant's mother had testified that she lived in the apartment. There was testimony that the defendant passed a police officer and went into the room with an object in his hand which turned out to be a switchblade knife. He placed the knife under a pillow. On recross-examination the defendant obtained the following testimony from Sergeant Spellman. Q. "Where did they [the police officers] go and where did you go when you broke into the apartment?" A. "Inspector Casoli went into the bathroom, and I went into the Frongillo boy's bedroom." Q. "So you went into the bedroom; is that correct?" A. "Yes, sir." Q. "Where did you find the sugar again?" A. "In the Frongillo boy's bedroom."

the questioning or the answers of the witness from which the jury could conclude that the defendant had been involved in criminal activities in the past or on a continuing basis. To the extent that inferences may be drawn from the witness's answers, they tend merely to confirm what had been put in evidence directly, namely, that the defendant had heroin in his possession on this occasion. Any error was harmless. See *Commonwealth* v. *Howard,* 355 Mass. 526, 530; *Commonwealth* v. *Valleca,* 358 Mass. 242, 246.

5. The defendant claims that the judge erred in instructing the jury in the absence of the defendant's counsel. After some deliberation the jury requested further instructions in the form of three questions: "1. Who was responsible for the renting of the apartment? 2. Is this the boy's mailing address? 3. How much is the other fellow involved?" The judge, in effect, simply instructed the jury to rely only upon the evidence in the case and not to speculate as to facts not before them. The record does not establish either the presence or absence of the defendant's counsel. Moreover, there is an obligation on the part of counsel to be available in the event the jury request further instructions. In any case, the defendant was obviously not prejudiced by the judge's statement of the standard caution to the jury to consider only the evidence in the case. Regardless of the right of the defendant to have his counsel present during the instructions to the jury, there was no prejudicial error in the instant situation. We see nothing in *Gideon* v. *Wainwright,* 372 U. S. 335, to the contrary. See *Commonwealth* v. *Wilson,* 357 Mass. 49, 55.

*Judgments affirmed.*