IN RE APPEAL NO. 977 FROM THE CIRCUIT
COURT OF BALTIMORE CITY, SITTING AS
A JUVENILE COURT

[No. 977, September Term, 1973.]

*Decided August 16, 1974.*

The cause was argued before ORTH, C. J., and MOYLAN and
LOWE, JJ.

*Peter S. Smith* and *Michael S. Elder* for appellant.

*Gary Melick, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Milton B. Allen,
State's Attorney for Baltimore City,* and *Howard B. Merker,
Assistant State's Attorney for Baltimore City,* on the brief,
for appellee.

Moylan, J., delivered the opinion of the Court.

This case involves the applicability of the confrontation clause of the Sixth Amendment, as fleshed out in *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), to a delinquency hearing in the Juvenile Court of Baltimore City. The juvenile affected is the appellant, who shall be known herein as "John Doe." [1] He and a companion, who shall be known herein as "Richard Roe," were charged with being delinquent by virtue of having committed acts which, had they been perpetrated by adults, would have constituted the crimes of 1) attempted robbery with a deadly weapon, 2) the use of a handgun in the commission of a crime of violence, and 3) assault with intent to murder. At a joint adjudicatory hearing, both respondents were found delinquent on the robbery and handgun charges and not delinquent on the assault charge by Judge Joseph L. Carter.

The robbery attempt in question occurred on September 18, 1973, at approximately 5:30 p.m. Four black males, apparently at the same time, entered Roman's Food Market. Richard Roe drew a gun upon Louis Roman, the owner. Mr. Roman fled toward the back of the store, pulling an audible burglar alarm as he did so. Richard Roe fired and a bullet struck the rear wall above Mr. Roman's head.

Richard Roe fled and was apprehended by the police after a short chase. The gun was recovered from some bushes near the store, where Roe had thrown it. Richard Roe was also positively identified by Dennis Lucas, a customer in the store at the time of the offense.

The case against the appellant was more tenuous. Lucas, the customer, made no observations pertaining to the appellant and did not identify him in any fashion, either at the trial or at the arrest scene. Officer Santivasci, who responded to the alarm, saw the appellant run from the store, although he also stated that he gave the appellant scant notice because he was busy pursuing Richard Roe. When Richard Roe was run down and brought back to the

---

1. See Maryland Rule 1097, effective 1 July 1974.

crime scene, the appellant was standing, unbothered by police, victim, or witness, in a crowd that had gathered. Only after an accusation had been made by Richard Roe and the appellant had been arrested, did Mr. Roman identify the appellant to the police officers as "part of the four that came into the store." At the trial, Mr. Roman could not identify the appellant.

The damning evidence against the appellant was a statement made by Richard Roe. As Richard Roe was being led back to the store, he pointed to the appellant who was standing in the gathered crowd and said, "I am not going for this myself. The other guy was with me is over there."

At the joint trial, Richard Roe elected not to testify. When the judge admitted the statement made by Richard Roe admitting his own guilt even as he accused the appellant of sharing that guilt, he appeared initially to be admitting it only as against Richard Roe and not as against the appellant. It is clear, however, that the statement was not so limited once it had been loosed upon the trial.

At the close of the evidence, the court asked for argument. The assistant state's attorney first summarized the case against Richard Roe. He concluded that phase of his argument, ". . . and I ask the Court to find the respondent, Richard Roe, delinquent of all three, and certainly if not of the lesser offense, as well as the other two petitions [sic]."

He then turned distinctly to the evidence against the appellant:

> "As far as [John Doe], I feel that [John Doe], along with the other two, who we do not know to this date who they were, was acting in concert with [Richard Roe]. [John Doe] was another thing, if Your Honor please. There was only one gun involved, and [Richard Roe] was the wielder of that weapon. [John Doe] was in the store. [John Doe] was running from the scene immediately thereafter. [John Doe] was in the vicinity at the apprehension, *and [John Doe] was pointed out by [Richard Roe], who, when he was caught, said he*

*was not going down the drain by himself."*
(Emphasis supplied.)

The court's curiosity was immediately piqued:

"THE COURT: Which one said that?"

The assistant state's attorney not only again identified the out-of-court declarant but again drove home the hearsay accusation:

"[Richard Roe] said to Officer Cohen as a spontaneous statement [a theory not theretofore urged and untenable in any event] that he is not going by himself, that he was with me, and referred to [John Doe], and I ask Your Honor to find [John Doe] as culpable as [Richard Roe]."

The defense, in closing argument, attempted to remove the sting of the hearsay accusation:

". . . we would like to go back and point out that the primary evidence submitted by the State is a piece of evidence which is — again it is inadmissible against our client, because it is an admission by [Richard Roe], and again, in *Markley v. State*, 173 Md. 309, that an admission or a confession of a co-defendant is not admissible for use against the co-defendant."

No statement followed from the court as to any limitation on the use of the Richard Roe statement and the final fact-finding by the court in arriving at its verdict indicates no such limiting:

"The next charge is that [John Doe] in company with [Richard Roe] unlawfully did, with a dangerous and deadly weapon, attempt to rob Louis Roman. I think that — and, of course, *you have got one definite piece of evidence here, which standing alone might not be enough, but* he was seen, that is to say, *[John Doe] was seen running from the store.* I think the testimony of the officer that Mr. Roman identified [John Doe] at the scene, or shortly

thereafter is admissible. *I think the other statement of [Richard Roe] is admissible. Taken together, I think it is sufficient.* I have no doubts of *his* participation in this affair and *his* guilt, so I find both of them delinquent as to that particular charge." (Emphasis supplied.)

The above fact-finding is clearly as to the appellant and not, as the State urged upon at argument, a composite fact-finding weaving back and forth between the cases against both accused. There is no mention of the gun or its recovery, the chase of Richard Roe or his identification by Lucas. The court was clearly summarizing the case against the appellant.

Although we are dealing for the first time with the application of this particular Sixth Amendment protection to the juvenile forum, the guiding principles give clear direction. *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), established that the confrontation clause of the Sixth Amendment was absorbed into the due process clause of the Fourteenth Amendment and, therefore, applicable to the states. *Bruton v. United States, supra,* established that, in a jury trial at least, the admission of a co-defendant's confession implicating the defendant constituted reversible error where the confessing co-defendant did not take the stand.[2] The undergirding principle is that such a procedure denies a defendant his Sixth Amendment right to confront, via cross-examination, his accuser.

Maryland had anticipated the *Bruton* decision, at least as to the literal non-admissibility of the confession of a non-testifying co-defendant against a non-confessing defendant. *Malcolm v. State,* 232 Md. 222, 192 A. 2d 281 (1963). Since the decision in *Bruton,* we have applied its principle in a number of cases, both jury and non-jury. *Smithson v. State,* 5 Md.

---

2. *Bruton* overruled *Delli Paoli v. United States,* 352 U. S. 232, 77 S. Ct. 294, 1 L.Ed.2d 278 (1957), which had held that a limiting instruction to the jury to ignore the confession in considering the case against the non-confessing co-defendant was sufficiently prophylactic to ward off any cross contamination.

App. 378, 247 A. 2d 542 (1968); *Lipscomb v. State*, 5 Md. App. 500, 248 A. 2d 491 (1968); *Richardson v. State*, 7 Md. App. 334, 255 A. 2d 463 (1969); *Ham v. State*, 7 Md. App. 474, 256 A. 2d 362 (1969); *Sutton v. State*, 8 Md. App. 285, 259 A. 2d 561 (1969); *Shedrick and Beckwith v. State*, 10 Md. App. 579, 271 A. 2d 773 (1970); *Adam and Green v. State*, 14 Md. App. 135, 286 A. 2d 546 (1972); *Bowman, Brooks and Harris v. State*, 16 Md. App. 384, 297 A. 2d 323 (1972).

In the present case, of course, we are dealing with a juvenile delinquency adjudicatory hearing, and not a criminal trial. *In re Gault*, 387 U. S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967), however, is completely dispositive. In applying various constitutional protections to the "quasi-criminal" proceedings in the adjudication of delinquency, the Supreme Court specifically included:

1. Notice of charges;
2. Right to counsel;
3. Right to confrontation and cross-examination; and
4. The privilege against compulsory self-incrimination.

On cross-examination, the Court was very explicit, at 387 U. S. 57:

> "We now hold that, absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements."

The applicability to juvenile delinquency adjudicatory hearings of the Sixth Amendment confrontation clause generally and the *Bruton* doctrine specifically cannot be doubted. We hold that they do apply.

It is, furthermore, clear in the instant case that none of the recognized exceptions to the *Bruton* doctrine bar its utilization here. The exclusionary rule of *Bruton*, for

instance, is not required where the confessing co-defendant takes the stand and the right to confrontation, through cross-examination, is therefore satisfied. *California v. Green*, 399 U. S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970); *Nelson v. O'Neil*, 402 U. S. 622, 91 S. Ct. 1723, 29 L.Ed.2d 222 (1971); *Lipscomb v. State, supra.* Such is not the case here. The exclusionary rule of *Bruton* has been held to be inapplicable where the co-defendant's confession does not directly implicate the defendant. *United States ex rel. Mascia v. Zelker*, 450 F. 2d 166, 168 (2d Cir. 1971); *United States v. Addonizio*, 451 F. 2d 49, 70-71 (3rd Cir. 1971), *cert. denied*, 405 U. S. 936, 92 S. Ct. 949, 30 L.Ed.2d 812 (1972). Such is not the case here. The exclusionary rule of *Bruton* has been held to be inapplicable where the questioned confession merely corroborates and makes more credible the testimony of an adverse witness, *United States ex rel. Siegal v. Lennox*, 460 F. 2d 690 (3rd Cir. 1971); *United States v. Addonizio, supra,* or where the references to the defendant are either neutral or favorable, *United States v. Tierney*, 448 F. 2d 37, 39 (9th Cir. 1971). Neither is the case here. The exclusionary rule of *Bruton* has been held to be inapplicable when the co-defendant's out-of-court confession is adopted by the defendant, *Miller v. Cardwell*, 448 F. 2d 186 (6th Cir. 1971); *Miller v. Cox*, 457 F. 2d 700 (4th Cir. 1972), or where it merely "interlocks" with the defendant's own statements, *United States ex rel. Duff v. Zelker*, 452 F. 2d 1009 (2nd Cir. 1971). Such is not the case here.

The State takes ultimate refuge in reading overbroadly a perfectly valid dictum of Judge Powers for this Court in *Bowman, Brooks and Harris v. State, supra,* at 16 Md. App. 388, n. 3: "In view of the basis of the *Bruton* holding, and the role of a judge in a non-jury trial as discussed by the Court of Appeals in *State v. Hutchinson*, 260 Md. 277, 271 A. 2d 641, it would seem that there could be no *Bruton* error in a non-jury trial in Maryland." *Hutchinson*, the predicate case, established simply that when a trial judge announces that he is factoring an admittedly inadmissible piece of evidence out of his decisional equation, we will indulge in the presumption that he, unlike a jury of laymen, is able to so

compartmentalize his thought process. Judge Powers' dictum, correct in the limited context that a jury cannot be relied upon to sort out the contaminating chaff of the inadmissible from the hygienic wheat of the admissible even upon proper instruction, simply did not speak to the situation where the judge himself misperceives the admissibility question in the first instance.[3] In the court trial, we initially presume that the judge, unlike the lay jury, is able to follow his own instructions in terms of careful discrimination. The presumption is rebutted, however (or, more properly, it does not even arise), where the judge's instructions to himself are discernibly erroneous. In the instant case, we do not question the capacity of the judge to discount the Richard Roe admission, had he indicated an inclination so to discount. The record reveals, however, that he affirmatively chose to consider and gave it a pivotal weight. That, we hold, was error.

It remains only to be seen whether the error was harmless. Our considered use of the adjective "pivotal" in the preceding paragraph betrays our answer to that question. *Bruton* errors, of course, may be harmless. *Schneble v. Florida*, 405 U. S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1972) (where "the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error"); *Harrington v. California*, 395 U. S. 250, 89 S. Ct. 1726, 23 L.Ed.2d 284 (1969) (where a *Bruton* error was found harmless because the testimony of other eyewitnesses made the questioned confession of a co-defendant relatively insignificant and cumulative). The acid test for harmless error was enunciated in *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), at 386 U. S. 24:

> "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a

---

**3.** In *Bowman*, as in *Hutchinson*, the trial court affirmatively excluded the questioned evidence.

belief that it was harmless beyond a reasonable doubt."

We are not satisfied in the present case beyond a reasonable doubt that the *Bruton* error did not contribute to the appellant's adjudication of delinquency. Indeed, we are satisfied that quite the reverse was true. In this belief, we are reinforced by *In re Ingram*, 15 Md. App. 356, 291 A. 2d 78 (1972). In *Ingram*, the judge was held to have improperly considered in a waiver hearing a prior criminal court conviction which had been voided. In reversing, we noted the inapplicability of the *Hutchinson* rationale because of the trial court's "obvious reliance" upon the voided criminal proceedings. The "obvious reliance" upon the Richard Roe confession in the instant case was manifest and explicit.

In view of our disposition of the case upon this issue, it is unnecessary to address the two other contentions raised by the appellant.

*Judgment reversed; case remanded for new hearing.*