RICKY LYNN TROVINGER, PATRICIA KAY LANE
AND ALLAN TOMBAUGH HEALEY *v.* STATE OF
MARYLAND

[No. 62, September Term, 1976.]

*Decided January 3, 1977.*

358

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*Richard M. Karceski*, with whom was *Harold I. Glaser* on the brief, for appellants.

*Gilbert H. Robinette, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *John S. Hollyday, State's Attorney for Washington County*, on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

Appellants were convicted of multiple violations of the Controlled Dangerous Substance Laws, Art. 27, Md. Code Ann. § 276 *et seq.* (1976), in a non-jury trial in the Circuit Court for Washington County (Rutledge, J.). Under separate indictments appellants Trovinger and Lane, and Trovinger and Healey, were convicted of conspiracy to distribute cocaine. Trovinger was also convicted of conspiracy to distribute marijuana. All three appellants were convicted of possession of cocaine with intent to distribute.

An informant's tip, relayed by Pennsylvania State Police Officer Prough to the Maryland State Police, set the stage for the investigation which resulted in the appellants' arrests. This information was presented in an affidavit pursuant to 18 U.S.C., § 2518 (1970) in support of an Ex Parte wiretap order. The affidavit alleged that the informant was negotiating, via telephone, to purchase 500 pounds of marijuana from Trovinger, and that Trovinger was in telephone contact with his supplier in Wisconsin. The affidavit further averred that the informant had been supplying information to the Pennsylvania State Police since 1973, and that this information had led to fifteen separate arrests for narcotics violations. The application for an Ex Parte order was granted on 17 October 1974, allowing interception of Trovinger's telephone calls for a period of not more than thirty days. From this date until 10 November 1974, when appellants were arrested, twenty-eight

drug-related telephone calls were intercepted. Of these calls, twenty were admitted as evidence at trial over appellant's timely objections.

The content of these conversations, coupled with testimony from the Maryland State Police, presented a scenario of ongoing drug traffic. Information gleaned from these phone calls disclosed that on 10 November 1974 the scenario would reach its climax when Trovinger would return to Washington's National Airport from a drug-buying trip, and would be met there by appellants Healey and Lane. On that date, after following their car from National Airport to the Hagerstown area, the Maryland State Police arrested the appellants. The curtain fell when a search of Trovinger revealed 177.008 grams of cocaine concealed on his person. Testimony established the resale value of this amount of cocaine to be in excess of $30,000. The instant indictments were issued on 26 November 1974.

On 13 August 1975 and again on 21 August 1975 appellant Trovinger voluntarily appeared, without counsel, at the Baltimore office of the Federal Drug Enforcement Administration. On 21 August 1975 he wrote out a 26-page statement relating his drug enterprise experiences for a period of several years. This statement contained no information concerning the case at bar. The statement was admitted only against Trovinger at his trial.

At trial, the appellants stipulated that the cocaine had been seized from Trovinger's person, that the car in which he was then a passenger was owned and operated by appellant Lane, and that appellant Healey was also present in the car at the time of the arrest. A motion to suppress the intercepted telephone conversations was denied. After a two-day trial, at which the three appellants were jointly represented by two attorneys, the appellants were convicted. This appeal followed.

The questions presented for our consideration may be summarized as follows:

(1) Was the Ex Parte order for the wiretap improperly granted?

(2) Was the statement of appellant Trovinger improperly admitted against him?

(3) Was there a conflict of interest between counsel for the appellants?

(4) Was the evidence insufficient to support the convictions?

Because we answer each question in the negative we shall affirm the convictions.

## The Wiretap

The privacy of telephone communication is guaranteed by the Fourth Amendment of the United States Constitution. Before this privacy may be invaded by the police, "probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense ..." (including narcotic offenses) must be demonstrated. Other statutory requirements must also be met. See 18 U.S.C., § 2518 (1970). Appellant Trovinger claims that his motion to suppress the intercepted telephone conversations was improperly denied because the underlying Ex Parte Order does not meet statutory standards. He challenges the legal sufficiency of the required affidavit for failure to adequately demonstrate the informant's reliability as well as the necessity for a wiretap. After independently reviewing the record and the affidavit we find these contentions to be without merit.

Appellant concedes the credibility of Cpl. Prough of the Pennsylvania State Police, but maintains that his informant's basis of knowledge was not proven. We disagree. The affidavit adequately demonstrates the basis for the informant's knowledge and amply supports his conclusions of the presence of criminal activity. It is evident within the four corners of the affidavit that the informant was dealing personally with Trovinger and was negotiating via telephone to purchase 500 lbs. of marijuana from him. The personal knowledge of the informant presented in the affidavit provides a sufficient basis for probable cause. See Spinelli v. U. S., 393 U. S. 410, 89 S. Ct. 584 (1969); Bolesta v. State, 9

Md. App. 408, 264 A. 2d 878 (1970). *Compare, Collins v. State,* 17 Md. App. 376, 302 A. 2d 693 (1972).

We hold further that the need for a wiretap was adequately demonstrated. The affidavit describes in detail the means of surveillance attempted to be used, and why these means had been, or would be, unsuccessful. The State need not exhaust all conceivable investigative possibilities before seeking a wiretap. In *U.S. v. Lanza,* 356 F. Supp. 27 (M.D. Fla. 1973), the granting of an Ex Parte order was challenged for failure to exhaust other investigative possibilities. In rejecting this argument, the court stated:

> "The purpose of the exhaustion requirements is not to foreclose the use of electronic surveillance until the State has exhausted every possible means of obtaining a viable case against the subjects, but merely to inform the authorizing magistrate or judge of the nature and progress of the investigation and the difficulties inherent in the use of normal techniques." 356 F. Supp. at 30.

See also *U.S. v. Leta,* 332 F. Supp. 1357 (M.D. Pa. 1971). In all other respects the matter contained in the affidavit conforms to the standards set forth in *Haina v. State,* 30 Md. App. 295, 352 A. 2d 874 (1976).

Appellant Trovinger further contends that the affidavit was fatally defective for failure to aver that the communication would be of a continuing nature. Although this issue is not properly raised on appeal, Md. Rule 1085, after examination of the affidavit, we find the argument without merit.

### Trovinger's Statement

On 13 and 21 August 1975 appellant Trovinger visited the Baltimore office of the Drug Enforcement Administration. At that time the appellant made a statement which detailed his traffic in narcotics, but omitted any reference to the activities for which he was then under indictment. His attorney was not present. This statement was admitted only

against appellant Trovinger at trial. He now attacks the admission of this statement on the sole ground that his Sixth Amendment right to counsel was violated. He does not question the relevancy or materiality of the statements.

Appellant initially relies upon *Blizzard v. State*, 30 Md. App. 156, 351 A. 2d 443 (1976) (*Blizzard I.*) *Blizzard I* adopted a liberal exclusionary rule for uncounseled, post-indictment statements. The thrust of this rule is that *all* uncounseled statements, elicited by the police after indictment, must be excluded from evidence. See, *e.g., United States v. Thomas*, 474 F. 2d 110 (10th Cir.), *cert. den.* 412 U. S. 932 (1973).

After the argument in the instant case, *Blizzard* was reversed by the Court of Appeals. *State v. Blizzard*, 278 Md. 556 (1976), (*Blizzard II*). In *Blizzard II* the Court, through Judge Smith, rejected the liberal exclusionary rule for uncounseled, post-indictment statements. The Court stated that, "... such a sweeping rule [requiring exclusion of all uncounseled, post-indictment statements] is hazardous in that it fails to take account of the special facts that arise in each new case". *Blizzard II*, at 22, citing *Commonwealth v. Frongillo*, 359 Mass. 132, 136, 268 N.E.2d 341 (1971). Thus it is clear that a challenged, uncounseled post-indictment statement is not automatically constitutionally vitiated, but rather must be evaluated in the light of its own peculiar facts.

Based upon our independent analysis of the present case, we hold Trovinger's statement to be without constitutional taint. Preliminarily, we point out that insofar as the instant charges are concerned, the statement is not inculpatory. It contains a detailed description of his dealings in drugs for many years prior to his arrest, but omits any reference to the offense for which he was then under indictment. Second, it is patent that the statement was not induced, elicited, or solicited, by the prosecution. To the contrary, it appears that Trovinger himself sought out the federal authorities and that his statement was palpably voluntary.

Trovinger first made contact with the Drug Enforcement Administration at their office in Philadelphia. He was there told to contact the Baltimore office. Trovinger visited the

Baltimore office on 13 August 1975. It was not until his second visit, one week later, on 21 August 1975, that Trovinger tendered his 26 page statement. There is some confusion on the point, but it appears that Trovinger was also advised of his right to counsel. Based upon these facts, we do not perceive that Trovinger's right to counsel has been violated. Not only was his statement not inculpatory for the charges for which he was tried, but it also appears that the statement was voluntarily made. See *United States v. DeLoy*, 421 F. 2d 900 (5th Cir. 1970), *Blizzard II, supra*.

Appellants Healey and Lane also cite as error the admission of Trovinger's statement. It is their claim that the improper admission of the statement prejudiced their defense. Assuming *arguendo* that the statement was improperly admitted against Trovinger, the contentions of Healey and Lane must nevertheless fail. We have long followed the common law rule that in a non-jury trial the judge may both rule on the admissibility of evidence and act as trier of fact with no prejudice to the respective parties, *State v. Hutchinson*, 260 Md. 227, 271 A. 2d 641 (1970); *In Re Appeal No. 977*, 22 Md. App. 511, 323 A. 2d 663 (1974). Moreover, because the statement does not implicate appellants Lane and Healey, and the statement was offered only against appellant Trovinger, the exclusionary rule of *Bruton v. United States*, 391 U. S. 123, 85 S. Ct. 1620 (1968), is inapplicable.

### Conflict of Interest

Our careful review of the record leads us to conclude that there was no fatally prejudicial conflict of interest present in this case. The State's evidence was subjected, as it was presented, to strict scrutiny by appellants' attorneys. The intercepted telephone calls, which comprised the State's case in chief, were all objected to and ultimately admitted only against respective parties identified in each phone call. None of the appellants presented a defense. There is no showing of a possible conflict among counsel and defendants as to theories or tactics of defense. We hold, therefore, that no conflict of interest resulted from the three appellants' representation by the same two attorneys.

*Sufficiency of the Evidence*

Appellants claim that there was insufficient evidence to support their respective conspiracy convictions as well as Lane and Healey's convictions of possession of cocaine with intent to distribute. After carefully reviewing the record, we find that these contentions are without merit. It was proper for the court to infer from the uncontradicted evidence adduced at trial that the alleged conspiracies were formed and that Lane and Healey did have possession of cocaine. *Seidman v. State,* 230 Md. 305, 187 A. 2d 109, *cert. den.* 374 U. S. 807 (1963); *Greenwald v. State,* 221 Md. 245, 157 A. 2d 119, App. dismissed, 363 U. S. 721 (1960).

Appellants Lane and Healey initially contend that their voices were not adequately identified from the intercepted telephone calls. Absent this identification, they argued, it could not be proven that they conspired together and therefore the conspiracy convictions must fail.

Whether the voices of appellants Lane and Healey were properly identified was a question of fact for the court to determine. Judge Rutledge had the opportunity to listen to the taped conversations and to observe and judge the demeanor of the State's witnesses who identified the respective voices. The appellants neither testified nor presented any evidence in their behalf. This, of course, is their constitutional right, but the voice identifications are nonetheless uncontroverted. Upon our review of the record we find ample evidence from which the judge could find that the taped voices were those of the appellants.

Appellants Lane and Healey further claim that their possession of the cocaine was not adequately proven.[1] We disagree. Our cases do not require actual possession of contraband; constructive possession will support a conviction. At the time of their arrest Lane and Healey were returning from the airport where they had traveled to meet Trovinger, knowing fully the illegal purpose of his travel. Based upon these facts, it was proper for the court to infer

---

1. It was stipulated at trial that Trovinger had possession of the contraband.

Lane and Healey were participating in "the mutual use and enjoyment of the contraband". *Folk v. State,* 11 Md. App. 508, 518, 275 A. 2d 184 (1971); *Anderson v. State,* 9 Md. App. 639, 267 A. 2d 302 (1970).

Because we are unable to find that the trial judge was clearly erroneous in his conclusions of fact, or that he erred in applying the law, we shall affirm the judgments. *Williams v. State,* 5 Md. App. 450, 247 A. 2d 731 (1968); Maryland Rule 1086.

*Judgments affirmed.*
*Costs to be paid by appellants.*