Leon SCHWIMMER, Petitioner,

v.

Thomas A. COUGHLIN, III, as Commissioner of Corrections of the State of New York, Respondent.

No. 82 Civ. 2080(MEL).

United States District Court,
S. D. New York.

July 19, 1982.

Irving Anolik, New York City, for petitioner.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for respondent; Daphne A. Fuller, Deputy Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

On September 19, 1977, three men followed an Indian diamond merchant from the U. S. Customs House into a subway and robbed him of $150,000 worth of diamonds. The men were apprehended and one of them implicated petitioner, Leon Schwimmer. Having learned that the police sought his arrest, Schwimmer turned himself in to the Manhattan District Attorney's office. He was charged by felony complaint and released on $25,000 bail.

A few days later, an informant working undercover for the Special Operations Unit of the New York City Police Department[1]

1. The Special Operations Unit was responsible for investigations into criminal activities involving organized crime. It had city-wide juris-diction. (Transcript of Suppression Hearing at 16–17).

advised the Unit that Schwimmer had talked to him several months earlier about setting up a robbery of a diamond courier. The informant said that he thought that Schwimmer might be involved in the recent kidnapping of a diamond courier who was at that time the subject of considerable news coverage.

The Unit authorized the informant to set up a meeting with Schwimmer, on the pretense that he was interested in a "partnership" for the purpose of stealing diamonds.

The informant arranged a meeting with Schwimmer for October 18, 1977. Prior to the date of the meeting, the officer who had been assigned to the case, Joseph Coll, ran a background check on Schwimmer and discovered the complaint filed against Schwimmer in connection with the September 19th diamond robbery. The meeting was held as scheduled, and a diamond robbery was purportedly planned. During the course of the meeting, Schwimmer mentioned that he had committed the September 19th robbery. Unfortunately for Schwimmer, the meeting was tape recorded, and the portions of the discussion in which Schwimmer implicated himself in the September 19th robbery were introduced at the trial which was held on those charges.[2]

Schwimmer was convicted of Second Degree Larceny on January 16, 1980. The conviction was affirmed by the Appellate Division, First Department, by an opinion dated December 10, 1981. The New York Court of Appeals denied leave to appeal.

■ Schwimmer petitions for habeas corpus, contending that the state court's denial of his motion to suppress the tape recording of the October 18th meeting was a violation of his Sixth Amendment right to counsel.[3] The state answers that the right to counsel

did not arise at the October 18th meeting because the conversation took place in the course of a good faith investigation with an objective independent of the pending charges, and because Schwimmer did not make the taped remarks as a result of interrogation, but rather volunteered the information. The state also argues that Schwimmer failed to exhaust his state remedies by failing to alert the state court to the federal nature of his claim.

## I.

■ In order to have exhausted his state remedies, a petitioner must have complied with the "federal labelling requirement," *Daye v. Attorney General*, 663 F.2d 1155; that is, in his brief to the state appellate court, he must have "explicitly refer[red] to a federal constitutional standard." *Id.* at 1156. Schwimmer did not explicitly refer to the federal constitution, but he did cite to and quote from federal cases. (Brief to Appellate Division at 11, 12). Whether reliance on federal cases is sufficient to satisfy the federal labelling requirement is unclear; moreover, the status of the labelling requirement itself is uncertain—the *Daye* case was recently reheard by the Court of Appeals *en banc*. In our view, Schwimmer's quotation of Supreme Court cases sufficiently alerted the state court to the fact that he relied, in part, on the federal constitution. In any event, in view of the conclusion, *infra*, that the petition must be denied on the merits, it is unnecessary to determine whether petitioner's reference to reliance on federal cases was sufficient to give the state court a fair opportunity to adjudicate his claims and thereby constituted exhaustion of his state remedy.

---

**2.** Separate charges were filed against Schwimmer in connection with the "phony" robbery which was set up at the October 18th meeting. Schwimmer pled guilty to these charges in November, 1979 (Kings County Indictment Number 356IR/77).

**3.** Schwimmer also contends that the state court erred in deciding the suppression motion under

a preponderance of the evidence standard, as opposed to a beyond a reasonable doubt standard. This contention may be disposed of summarily: on a motion to suppress, the Constitution only requires that the state to prove its case by a preponderance of the evidence. *See, e.g., Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

## II.

The analysis of the Sixth Amendment claim begins with a discussion of the seminal decision in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In *Massiah*, while the defendant was on bail, his co-defendant, in cooperation with the government, installed a hidden microphone in his automobile and then deliberately engaged Massiah in a conversation about the crime. The Supreme Court reversed Massiah's conviction, holding that the introduction of the taped conversation at Massiah's trial violated his right to the assistance of counsel.

The Second Circuit has twice had occasion to consider the scope of Massiah's prohibition on admission of post-indictment statements made without the presence of counsel. In *United States v. Garcia*, 377 F.2d 321 (2d Cir. 1967), the court affirmed the introduction of a conversation between the defendant and an undercover agent who, not knowing of the defendant's pending indictment, asked him whether he had ever been in trouble with the police. The court concluded that:

> "*Massiah* does not immunize a defendant from normal investigation techniques after indictment; ... it only protects against deliberate efforts of law enforcement agents which are *specifically aimed* at eliciting incriminating statements relative to the crime under indictment."

*Id.* at 324, (emphasis added), *citing United States v. Edwards*, 366 F.2d 853, 873 (2d Cir. 1966); *Escobedo v. State of Illinois*, 378 U.S. 478, 490–91, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977 (1964).

More recently, in *Wilson v. Henderson*, 584 F.2d 1185 (2d Cir. 1978), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979), the court considered a case in which an informant had been placed in the defendant's cell for the purpose of listening for any remarks the defendant might make which would lead to the identification of his accomplices. Unlike *Garcia*, the efforts of the police in *Wilson* were directed toward the particular crime for which the defendant had been charged, not toward an independent investigation. Nevertheless, the court ruled that the right to counsel had not arisen because the informant "did not interrogate [the defendant], nor in any way attempt to deliberately elicit incriminating remarks." 584 F.2d at 1191.

Thus, under *Garcia* and *Wilson*, the questions presented are whether the efforts of Officer Coll and the informant were "specifically aimed at eliciting incriminating statements relative to the crime under indictment," *Garcia, supra* at 324, and whether Schwimmer was "interrogated." [4]

On the first question, the purpose of the October 18th meeting, the trial judge, Justice Wallach, heard testimony at a hearing held on the motion to suppress. The sole witness at the hearing was Officer Coll. Justice Wallach wrote a careful and thorough opinion on the motion, in which he considered Coll's testimony and the various points raised in Coll's cross-examination [5] and concluded that "the police were pursuing an independent investigation of

---

[4]. The state does not attempt to distinguish the cases cited above on the grounds that Schwimmer had not been indicted, but merely charged by felony complaint at the time of the conversation in dispute. Although the point is not disputed, it is worth noting that, under *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the right to counsel attaches to the time of the "initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." Thus, adversary judicial proceedings had commenced by the filing of the formal complaint against Schwimmer, and the right to counsel had attached.

[5]. Schwimmer tried to rebut Coll's testimony by pointing out on cross-examination that the police had lost all records of the first meeting between Coll and Schwimmer, and that the informant had waited six months to bring his initial discussion with Schwimmer to the attention of the Special Investigations Unit, both of which, Schwimmer's counsel argued, suggest that the undercover investigation may have been merely a sham contrived in the hope that it would lead Schwimmer to say something inculpatory. Justice Wallach considered these contentions and found Officer Coll's testimony credible in spite of them. Schwimmer has presented us with no facts which would tend to disturb Justice Wallach's finding of credibility.

Schwimmer in good faith." (Opinion at 7). The question whether Coll's investigation was or was not an independent investigation is a pure question of fact, decided by the state court in a proceeding which Schwimmer does not contend to have been defective in any respect. Under the circumstances, the factual finding of the state court must be presumed to be correct, 28 U.S.C. § 2254(d).

■ We believe that the finding that the police were, in the words of Justice Wallach, "conducting a genuine investigation into defendant's potential involvement in unrelated serious crimes" disposes of Schwimmer's claim. However, because the Court of Appeals focused at such length in *Wilson, supra,* on the question of interrogation, it is appropriate to consider whether Schwimmer was interrogated at the October 18th meeting, a matter which can be determined on the basis of the transcript of the meeting, which is included in the record.

■ The transcript fully supports Justice Wallach's conclusion that Coll and the informant "never make the slightest reference to other crimes in which [Schwimmer] may have been involved. It is [Schwimmer] himself who *voluntarily intrudes* the subject of the [September 19th] robbery in a manner which could not reasonably have been anticipated by the undercover investigators." (Opinion at 7) (emphasis added). Although Coll and the informant asked a handful of follow-up questions, the transcript conveys clearly that Schwimmer initiated the subject of the September 19th robbery because *he* wanted to discuss it with them. Schwimmer introduced the subject, in response to a question as to why he had taken so long to get back to them, by stating: "Now let me tell you what happened between, because I'm red hot." The informant says, "OK" and in the next sentence, Schwimmer begins to implicate himself in the crime. From then on, with next to no questioning and certainly no prodding from either Coll or the informant, he describes his involvement in the robbery. In the circumstances, there is no basis for the contention that Schwimmer was inter-

rogated; the case at bar is a classic incident of a defendant "blurting out" incriminating evidence to the police.

For the reasons stated above, we conclude that Schwimmer was not denied his right to counsel by the introduction of the statements made on the October 18th tape recording. Accordingly, the petition is denied.

A certificate of probable cause is granted. It is so ordered.